## HIGERT *v.* THE CITY OF GREENCASTLE.

CITY.—*Liability for Defect in Sidewalk.*—Where a city improved one side-walk and the roadway of a street, but did not improve the opposite sidewalk, and a lot owner on the side unimproved made a sidewalk, in front of his property, under the direction, as to the grade thereof, of the civil engineer of the city (being a continuation of a sidewalk which had been used by the public for several years), which he so constructed that it terminated in an abrupt descent, over which a foot passenger fell and injured himself in the night-time.

*Held,* that the city was liable for the injury, in the absence of negligence of the injured party, the city having notice of the dangerous character of the side-walk, notwithstanding such sidewalk had been so constructed without author-ity from the city.

From the Putnam Common Pleas.

*S. Claypool, J. A. Matson,* and *C. C. Matson,* for appellant.

*D. E. Williamson, A. Daggy, S. Turman,* and *J. Birch,* for appellee.

BUSKIRK, J.—This was a suit brought by Higert, the appellant against the city of Greencastle, appellee, for an injury alleged to have been received by reason of a defective sidewalk in said city.

The complaint is in two paragraphs.

The first charges that the defendant so negligently and unskilfully graded Jackson street, in said city, and the side-walks thereof, and so permitted and caused the same to be done, as to produce a dangerous fall in the east sidewalk of said street, and at a place used and open for public travel, and suffered the same to remain for a long time in said dan-gerous condition—having full knowledge thereof—without lights or guards, and that plaintiff, while passing along said street in the night-time, at said place, without fault on his part, fell and was injured; wherefore, etc.

The second paragraph alleges that the said defendant made an order and caused said Jackson street to be graded to the established grade, and improved between the side-walks of said street along and adjacent to the place where said injury occurred, and that afterward one John F. Jones, under the direction of the civil engineer of said city, made

Higert *v.* The City of Greencastle.

and established the grade of his sidewalk along the line of said improvement and adjacent to his lots, and thereupon paved and curbed his sidewalk; and that by reason of said work by said Jones, and of the improvements by the city along Jackson street, between the sidewalks, there was created a perpendicular fall from the surface of said pavement and over the curb thereof into said alley, of more than four feet, into which said plaintiff fell and was injured, without fault on his part; and that defendant had knowledge of said defect in said sidewalk, but failed to remove or repair the same.

To this complaint the defendant answered in four paragraphs: The first paragraph was a general denial. To the third paragraph of answer the court sustained a demurrer.

The second paragraph of answer first denies that said fall was made by defendant, or by any agent, servant, or employee of defendant, or by any one acting under any authority of defendant, but avers that said fall, if any such existed, was made by one John F. Jones in the construction of a work for his own private use and benefit, and not for the use or benefit of the defendant, or of the public, and over whom, in the making thereof, defendant neither exercised nor assumed to exercise any authority, direction, or control whatever; and, further, that the place where said injury is alleged to have occurred was not on a part of said street which was then, or ever had been, prior thereto, used for public travel, or for persons or conveyances to pass over in any manner whatever, but was on an unimproved part of said street, and where said city never had made any excavations, fills, or improvements, or done any work of any kind; that at said time, on the opposite side of said street, there was a good, smooth, substantial sidewalk, of ten feet in width, safe and convenient, and used for public travel; and also, adjacent to said place, said street was to the width of forty feet well improved, smooth, free from all obstructions, and open and used for public travel, over which sidewalk or street said plaintiff might have passed with safety; that said plaintiff

was a citizen of said city, and well acquainted with the condition of the public streets therein, and carelessly and negligently left the improved and travelled part, and in the night-time, it being very dark, without a light, attempted to pass rapidly over said unimproved part of said street, and thereby, of his own fault, received said injury.   And said paragraph further alleged that, in improving the streets of said city, it was, at the time of said injury, and had been for a long time prior thereto, the general custom and plan of said city, in making said improvements, to make a sidewalk for public travel upon one side of the streets only; that at said time the public streets were, to a very large extent, so improved, all of which was at said time well known to said plaintiff; that the natural surface of the streets and of the ground upon which said city is situate is exceedingly hilly and broken, and that to improve the streets therein to the full width would be burdensome, oppressive, and ruinous to property holders; for which reason said city had adopted the plan aforesaid, all of which was well known to the plaintiff and the public, but that said plaintiff, in view of said facts and of his knowledge thereof, failed and refused to use due care and caution, and negligently left the travelled part of said street, and thereby received said injury, etc.

The fourth paragraph of the answer denies that the place where said injury occurred was on a public street, at a place used for public travel, but avers the same was on an unimproved part of said street, and where no sidewalk had ever been made or attempted to be made by said defendant, and at a place which was not then, and never had been used for public travel; that said plaintiff, well knowing said facts, carelessly and negligently undertook to pass over said unimproved part, and of his own wrong and fault received said injury.   To the second, third, and fourth paragraphs of this answer, the plaintiff filed a demurrer, which was by the court sustained as to the third, and overruled as to the second and fourth; which ruling of the court in overruling said demurrer

to the second and fourth paragraphs of said answer the plaintiff assigns for error.

There was issue, trial by jury, verdict for the defendant. The court overruled a motion for a new trial and rendered judgment for appellee on the verdict of the jury.

Three of the reasons assigned for a new trial are discussed by counsel for appellant.

1. The refusal to instruct as requested by the appellant.

2. The instructions given by the court of its own motion.

3. That the verdict was not sustained by, but was contrary to, the evidence.

The instructions requested by the appellant and refused by the court were as follows:

" 1st. Under the laws of the State of Indiana, the common council of a city, incorporated under the general laws of the State for the incorporation of cities, has exclusive power over the streets (Acts of 1867, p. 63), including sidewalks and alleys, and therefore the municipal corporation which they represent is liable for all injuries happening by reason of their negligence in suffering the streets, alleys, or sidewalks to remain in a condition hazardous to the life and limb of persons passing along the streets and sidewalks.

" 2d. The defendant, if a municipal corporation, organized under the laws of the State of Indiana, is liable for injuries sustained by reason of unguarded excavations or perpendicular falls, made in a public street or sidewalk within the bounds of the city, if the same be hazardous to the life or limbs of persons passing along said streets, and if the city had knowledge of such condition of things, and the injury happened to the party complaining, without blame or neglect, or want of care on his part, although the fall or excavation may have been made by a third person.

" 3d. If Jones, even without the previous order of the city authorities, made and constructed the sidewalk adjacent to his property according to the established grade of the city, for his own private convenience, and after constructing said

sidewalk, there became and there was a perpendicular fall from said walk into the alley, endangering the lives and limbs of persons passing along said sidewalk in the night-time, and if the city had knowledge of such condition of things, and failed for an unreasonable time to guard against such dangers, either by putting up guards or filling said alley, or in some other way, for an unreasonable time, and the plaintiff by reason of such condition of the said sidewalk, and such neglect of the city, suffered injuries by falling from said sidewalk into the alley, without carelessness or want of due care on his part, he, the plaintiff, being ignorant of such condition of the sidewalk, the city is liable to the plaintiff for such damages as he may have so sustained.

"4th. If you find the sidewalk in the condition complained of by the plaintiff, it is a question of fact for you to determine from all the evidence in the case, and under the instructions of the court, whether the city had notice of said defect, and whether it was negligence in the city.

"5th. Notice to the common council is notice to the city.

"6th. Whether an obstruction or fall in a sidewalk renders the sidewalk unsafe, if the fall is not in a travelled part of the sidewalk, is a question of fact for the jury.

"7th. If you find that the sidewalk beyond the alley where the said injury is alleged to have happened was not used by the public, this does not of itself relieve the city from liability.

"8th. Even if the sidewalk beyond the place of the alleged injury was not used, if there was a fall in the sidewalk at the place alleged, and such fall was hazardous to the public, and the city knew it, it was the duty of the city to protect the public, either by erecting guards at that point, or in some other way.

"9th. The simple fact that the plaintiff was a citizen of the town is no defence.

"10th. The fact that Jones erected said sidewalk is not of itself a defence for the city.

"11th. The fact that there was another street or alley by

which the plaintiff might have reached the point to which he was going does not relieve the city from liability. .

" 12th. The city is not relieved from liability on account of her neglect, by reason of the fact that Jones or any one else may be liable for the same injury.

" 13th. There may be localities where it is the duty of the city to work the streets for travel over the whole width and over both sidewalks.

" 14th. Although a town or city is not ordinarily bound to fence its streets, it is bound either to erect fences or railings at places which would otherwise be unsafe for travellers exercising ordinary care or to render such places safe by improvements.

" 15th. If Jones established the grade of the sidewalk, and built his pavement upon said grade, and afterward the city ratified said act, the legal effect is the same as if the work was done pursuant to the direction of the city.

" 16th. If after the city had established the grade, improved and filled the street according to the established grade, it became and was the duty of Jones to improve the sidewalk, and therefore the legal effect of Jones' constructing the sidewalk is the same as if the city had directed Jones to make the improvement; and if the jury are satisfied from the evidence that the said fall was the result of the improvements made by the city, or of the improvements which the improvements of the city rendered necessary, the city is liable for injuries happening to the plaintiff without negligence on his part."

The instructions given by the court, of its own motion, were as follows:

" 1st. An incorporated city, under the laws of the State of Indiana, has the exclusive jurisdiction, power, and control over the improvement of the streets, alleys, and sidewalks of the city, but this exclusive jurisdiction over the subject does not require the city to improve all the streets, alleys, and sidewalks of the city immediately upon its organization and at the same time.

" 2d.  The city is to determine by her council what streets, alleys, or sidewalks shall be improved, and the manner of their improvement, taking into consideration the wants of the public, the proximity to the place where the business of the city is done, and the accommodation of the most densely populated parts of the city.   But in determining what streets, alleys, or sidewalks, or parts thereof, shall be improved, the council is performing a judicial act for which the city is not liable.

" 3d.  But after the city council has passed an order for the improvement of any street, alley, or sidewalk, and commenced the improvement of the same, she is responsible for the improper or negligent construction of the same, and responsible for not keeping the same in proper repair afterward, for the reason that, attempting to improve, they hold out to the public that they have made that portion of the street, alley, or sidewalk in a safe condition for the use of the public.

" 4th.  If the jury believe, from a preponderance of the evidence, that a place on the east sidewalk of Jackson street, where the alleged injury occurred was, before the injury, attempted to be improved ·by the city, and was done in such an unskilful or negligent manner as to cause the injury complained of, without the fault or negligence of the plaintiff, then the jury will find for the plaintiff.

" 5th.  If the jury believe, from a preponderance of the testimony, that the sidewalk on the east side of Jackson street, running south from the public square to the alley, between Walnut and Poplar streets, had been improved by the adjoining owners of the lots in accordance with the general grades and plans of the city, in improvements of the city, so as to convey the idea to the public that the improvement had been made by the city, and that the city had improved said sidewalk between said alley and Poplar, leaving a perpendicular and dangerous depression in the alley, the city is liable for any injury that may have occurred to the plaintiff

Higert *v.* The City of Greencastle.

without his fault, by reason of the city not extending her improvements across the alley, so as to intersect with the improvement of the sidewalk upon the north side of the alley; by their improvement on the south side of the alley they hold out to the public that the intersection had been made, and the city would be liable unless the plaintiff had personal knowledge of the depression in the alley.

" 6th. If the jury believe from the evidence that the city did not make any of the improvement on the sidewalk where the alleged injury occurred, or south and immediately adjoining thereto, so as reasonably to induce the public, in travelling along the sidewalk, to suppose the alley was also improved and in a safe condition, the city would not be liable.

" 7th. The custom of the city in the improving of only one sidewalk on a street, except in the most populous and business parts of the city, a long continued residence in the city of the plaintiff, his knowledge of the custom and manner of improving the sidewalks, the good condition of the streets and sidewalks immediately west and adjoining the place where the alleged injury occurred, are proper facts and circumstances to be considered in determining the negligence of the defendant or the want of care and prudence in the plaintiff's attempting to pass along that sidewalk, of a dark night without a light.

" 8th. If it appears by the evidence in this case that by the want of ordinary care and prudence the plaintiff contributed directly to the injury, he can not recover; in order to make the city liable he must make a case in which he was without blame or negligence, and the city was entirely in fault.

" 9th. The question of unskilful and negligent construction of improvements or repairs on improvements by the defendant, the negligence or want of proper care by the plaintiff, are questions exclusively for the jury to determine.

" 10th. The jury is the exclusive judge of the testimony

and will give to the evidence of each witness such weight and credit as they think it entitled to.

"11th. If you should come to the conclusion that the plaintiff is entitled to recover in this case, you will allow him such compensatory damages as you may think he has sustained, which will include all necessary expenses, loss of time, and pain and suffering on account of the injury. But you cannot allow him exemplary damages, which means over and above the loss sustained, as an example to others."

Proper exceptions were taken to the giving and refusal to give the foregoing instructions.

The errors assigned are the overruling of the demurrer to the second and fourth paragraphs of the answer, and the motion for a new trial for the three reasons above stated.

The same questions arise upon the overruling of the demurrer to the answer that do upon the giving and refusing to give instructions, and we do not deem it necessary to take up in detail the several questions discussed by counsel. The real case of the appellant is presented in the second and third instructions asked and refused.

The real defence of the city is stated by her counsel as follows:

"It will be observed that the point in controversy is not whether the defendant was bound to provide a safe and convenient way for public travel on said street. The city had fully done that. The allegations of the answer, and which are entirely sustained by the evidence, are, that defendant had provided a good, safe, and convenient passway on said street, forty feet wide, and, in addition, a good and safe sidewalk, ten feet wide; that the same was amply sufficient to accommodate the wants of the public in said town or city, but that plaintiff left that part and undertook to pass along outside of the travelled and improved part, and thereby received said injury. Is, then, the defendant liable because she had not, by her common council, ordered and caused said unimproved part to be improved, or, in other words, because she had not improved said street to its full width?

We think not, clearly. This was a judicial act, for the non-performance of which she can not be held liable. Having improved so much as, in her judgment, the public wants required, the defendant can not be held liable because her common council did not see fit to extend said improvements so as to embrace the entire street. Neither is defendant liable for not removing an obstruction placed by a wrong-doer on such unimproved part, and which in no way interfered with and endangered travel on the travelled track. It is only on the ground that the defendant was bound, in the first instance, to improve and keep such part in a safe condition for travel, that she can be held liable for not removing obstructions placed there by a wrong-doer. Had defendant improved or attempted to improve so as to invite public travel on such part of the street, or had said injury been caused by a defect in the ' usual and ordinarily travelled portion' of said street, it would have presented a very different question."

Counsel for appellant state their position as follows :

" We do not insist that the defendant was bound to keep her streets and sidewalks in good and convenient condition for public use, but that she was bound to keep them in a reasonably safe condition, and, within a reasonable time after knowledge of the fact, to protect the public in some way from dangerous defects in her streets or sidewalks, however happening or created, whether by the action of the city, of the elements, or by a stranger, or by a wrong-doer."

The substantial facts of the case, as they appeared upon the trial, are given by John F. Jones, who testified that he was the owner and proprietor of the Jones House; that in the spring of 1869, he determined to build a brick pavement along the west side of his house, and that for that purpose he procured the services of the city engineer to fix a grade stake at the north-west corner of his lot, by which he might build. The engineer put down the grade stake, and witness followed the grade of the city as he understood, except at the south end of the pavement he lowered it somewhat, to

avoid as much as possible the fall that would necessarily occur in the sidewalk (at the alley crossing). In building said walk, he first built a perpendicular stone wall at the south end of the pavement and then laid the bricks. When his walk was completed, there was a perpendicular fall from the sidewalk into the alley of about four feet. After the sidewalk was done, he found that the mouth of a culvert at the south end of it was obstructed, and he asked the common council to remedy it. Very soon after this, the engineer came with a force of hands and extended the mouth of the culvert of the alley a distance of twenty feet into the alley, and after doing this, the engineer covered the culvert with earth and refuse rock, and in this way raised the alley at the south end of said pavement, so that the said fall after that was only two feet or less. After this, he (witness) called the attention of two of the council to the condition of the sidewalk and alley at that point, and took them to see it. The improvement of Jackson street between the sidewalks was made by order of the common council, and that improvement rendered it necessary that he (witness) should put down a pavement, to protect his property.

On cross-examination, he stated that he got no permission from the council to build the pavement, but " I built it for my own convenience. I supposed an ordinance years ago requiring citizens to improve their sidewalks was still in force."

The real question, therefore, for our decision is, whether the city is liable for the injury sustained by the plaintiff, in consequence of the acts performed by Mr. Jones, under the facts above stated.

There have been many decisions upon the liability of municipal corporations for injuries occasioned by defective streets and sidewalks, and obstructions thereto. There is much conflict in these decisions, and there are nice shades of difference between the rulings, that are regarded as being in the main harmonious. Counsel have referred us to a large number of such cases and have reviewed many of them.

Judge Dillon, in his work on Municipal Corporations, has made a very careful and able review of the authorities bearing upon the questions involved in this case, and has deduced therefrom certain principles of law, which he regards as settled by the weight of authority. Instead, therefore, of attempting a review of the authorities, we prefer to rely upon the deductions made therefrom by Judge Dillon.

Sections 789 and 790, commencing on page 753 and ending on page 761, read as follows:

" Sec. 789.  It may be fairly deduced from the many cases upon this subject referred to in the notes, that in the absence of an express statute imposing the duty and declaring the liability, municipal corporations proper having the powers ordinarily conferred upon them respecting bridges, streets, and sidewalks within their limits, owe to the public the duty to keep them in a safe condition for use in the usual mode by travellers, and are liable in a civil action for special injuries resulting from neglect to perform this duty. Such a duty and liability are considered to exist, without a positive statute, when the following conditions concur:

"1. The place in question, whether bridge, sidewalk, or street, must be one which it is the duty of the corporation to repair or keep in a safe condition; and this duty (to keep in repair), if not specifically enjoined, must arise upon a just construction of the charter or statutes applicable to the corporation.

" 2. This duty or burden must appear upon a fair view of the charter or statutes to be imposed, or rest upon the municipal corporation, as such, and not upon it as an agency of the state, or upon its officers as independent public officers. (This, however, in general, appears sufficiently where the municipality sought to be made liable exists under a special charter or general act which confers upon it peculiar powers and privileges as respects streets, their control and improvement, not possessed throughout the state at large under its general enactments concerning ways.)

" 3. The power to perform the duty of maintaining the

streets in a safe condition, by authority to levy taxes or impose local assessments for the purpose, must be (as it almost always is) conferred upon the corporation.

"Where the duty to keep streets in repair is, in terms, enjoined upon the corporate authorities, and they are supplied with the means to perform it, there is little difficulty, we think, in holding the corporation liable, on the general principles of the law, without an express statute declaring the liability to a civil action by any one specially injured by its neglect to discharge this specific duty. But where the duty to repair is not specifically enjoined, and an action for damages, caused by defective streets, is not expressly given, still, both the duty and the liability, if there be nothing in the charter or legislation of the state to negative the inference, has often, and, in our judgment, properly, been deduced from special powers conferred upon the corporation to open, grade, improve, and exclusively control public streets within their limits, and from the means which, by taxation and local assessments, or both, the law places at its disposal to enable it to perform this duty.

"The municipal corporation is not an insurer against accident upon the streets and sidewalks. Nor is every defect therein, though it may cause the injury sued for, actionable. It is sufficient if the streets (which include sidewalks and bridges thereon) are in a reasonably safe condition for travel in the ordinary modes, by night as well as by day, and whether they are so or not is a practical question, to be determined in each case by its particular circumstances. The ground of the action is either positive misfeasance on the part of the corporation, its officers, or servants, or by others under its authority, in doing acts which cause the street to be out repair, in which case no other notice to the corporation of the condition of the street is essential to its liability; or the ground of the action is the neglect of the corporation to put the streets in repair, or to remove obstructions therefrom, or to remedy causes of danger occasioned by the wrongful acts of others, in which cases notice of the

Higert v. The City of Greencastle.

condition of the street, or what is equivalent to notice, is necessary, as will presently be stated, to give to the person injured a right of action against the corporation, unless, indeed, the matter be otherwise regulated by statute.

" It is also essential to liability that the plaintiff should have been using reasonable or ordinary care to avoid the accident, or, in other words, he must be free of any such fault or neglect on his part, as will in actions for negligence defeat a recovery. The case would be exceptional indeed when the plaintiff could properly recover vindictive, or more than actual or compensatory damages.

" Sec. 790. Where streets have been rendered unsafe by the direct act, order, or authority of the municipal corporation (not acting through independent contractors, the effect of which will be considered presently), no question has ever been made, or can reasonably exist, as to the liability of the corporation for injuries thus produced, where the person suffering them is without fault, or was using due care. Where the duty to keep its streets in a safe condition rests upon the corporation, it is liable for injuries caused by its neglect or omission to keep the streets in repair, as well as for those caused by defects occasioned by the wrongful acts of others; but, as in such case this basis of the action is negligence, notice to the corporation of the defect which caused the injury, or facts from which notice thereof may reasonably be inferred, or proof of circumstances from which it appears that the defect ought to have been known and remedied by it, is essential to liability; for in such cases the corporation, in the absence of a controlling enactment, is responsible only for reasonable diligence to repair the defect or prevent accidents after the unsafe condition of the street is known, or ought to have been known, to it, or to its officers having authority to act respecting it."

It is very clearly established by the above authority that the appellee is liable for damages occasioned by the wrongful acts of John F. Jones, if chargeable with notice of the dangerous condition of the sidewalk.

It is, however, earnestly contended by counsel for appellee that she is not liable for the injury received by the appellant, for the reason that the place where the injury was received had not been improved by the city and set apart to the public use, and did not constitute a part of the usual and ordinarily travelled portion of the street, where the corporation has made improvements, and by their acts invited public travel.

Counsel for appellee, in support of the foregoing position, argue as follows:

"In case of *Hutson* v. *The City of New York*, 5 Sandford, 289, the city was held liable for not keeping the 'usual and ordinarily travelled portion' of a public street in repair, but Mason, justice, in delivering the opinion of the court, at page 302, says: 'We would not be understood to go the length of deciding that whenever a street is opened by the corporation on paper, or by proceedings under the statute, it is their duty forthwith to regulate and pave it. There are several steps in the matter, all which, we apprehend, are in the legislative discretion of the corporation. It belongs to them, in the exercise of their discretion, to determine, 1st, when a street shall be actually opened for the accommodation of the public; 2d, how it shall be worked, whether as a road or street; 3d, when it shall be regulated, and the curb and gutter set; and 4th, when it shall be paved; but after they have actually opened it for public accommodation and by their acts invited the public to travel over it, the duty then becomes absolute to keep it in repair.' So in the case at bar. We insist it was in 'the legislative discretion of the corporation' to determine in what manner and how much of said street should be improved, and that it is responsible for keeping in repair so much only as it had, by its acts, invited public travel upon.

"See, also, *Whitney* v. *The Town of Essex*, 38 Vermont, 270; where it was held, that 'a town having a travelled track sufficiently wide and suitable for all purposes of travel, and in repair, is not liable for injuries received in consequence of a defec-

tive foot path in the highway fifteen or twenty feet from the travelled track, which the town had never worked or repaired, though the public foot travel has passed over it thirty years.'

"See, also, *Smith* v. *Wendell*, 7 Cush. 498. DEWEY, J. in opinion in that case, says: 'It has become well settled law, that towns are not necessarily chargeable with damage arising from every obstruction within the limits of a located highway. They are not liable for such obstructions in portions of the highway not a part of the travelled path, and not so connected with it that they will affect the security or convenience for travel of those using the travelled path.' See, also, to same effect, *Carolus* v. *The Mayor, etc., of New York*, 6 Bosworth, 16; *Rice* v. *Montpelier*, 19 Vermont, 470. In *Shepardson* v. *Inhabitants of Colerain*, 13 Met. 55, DEWEY, Judge, in opinion again says: 'That it is not enough that the injury be shown to have occurred within the actual limits of the located highway, seems to be well settled by authority, and upon sound principle. The contrary doctrine would, in effect, require the entire width of the highway to be free from obstructions, and fit for use for the traveller; a burden quite too onerous upon towns, that are bound to keep their roads in repair.' To the same effect is *Howard* v. *North Bridgewater*, 16 Pick. 189.

"It is true some of the cases cited above refer only to towns; but in *The City of Providence* v. *Clapp*, 17 Howard, 161, the United States Supreme Court, NELSON, Justice, hold that cities and towns are alike in their responsibility and in their immunity. But whether this be true or not, we apprehend the rule is the same, to this extent at least, that it is first left to the legislative discretion of the corporation, to determine in what manner and how much of a street shall be improved, taking into consideration the wants of the public; and having thus determined, it is then only bound to keep in repair that upon which it has invited travel. Any other doctrine would, in small cities like the one involved in this suit, situate upon hills and cut up by ravines, require all the property of the city to make the streets."

It will be observed that the most of the cases referred to
are from the New England states.  In those states, the
common law liability of municipal corporations, . such as
counties, towns, and cities does not exist, but such liability is
regulated by express statutes, and the modes of proceeding
are in like manner prescribed by positive enactments.  The
common law liability of such corporations is recognized in
the federal courts, and in the most of the other states.  It
has been repeatedly held to exist in this State.  *Silver's* v.
*Nerdlinger*, 30 Ind. 53, and cases cited.

The rule as it exists in the New England states is stated
and explained in sections 762, 763, 786, 787, and 788 of Dil-
lon on Municipal Corporations.  In determining the weight
which should be given to the decisions of the courts of such
states, affecting the liability of counties, towns, and cities
for injuries sustained by reason of defective, highways and
streets, the statutes upon which decisions were based should
be examined with the view of ascertaining whether they
have changed the common law or simply re-enacted the law
as it existed under the well settled principles of the common
law.

We find the following section in the laws of Massachu-
setts :

" Sec. 82.  No way opened and dedicated to the public
use, which has not become a public way, shall be chargeable
to a city or town as a highway or town way, unless the
same is laid out and established by such city or town in the
manner prescribed by the statutes of the Commonwealth."
*Oliver* v. *Worcester*, 102 Mass. 489.

Similar statutes will be found in the most, if not all, of
the New England states.

Under these statutes it has been repeatedly held, there is
no liability unless the highway or street has been opened
and dedicated to the public use.

The duty of a city in reference to the improvement of
its streets seems to be correctly stated in *Hutson* v. *The City
of New York, supra.*

The time and manner of their improvement are within the discretion of the common council, except where the charter makes the duty imperative. We think the law is correctly stated in the case, where the court say, " But after they have actually opened it for the public accommodation, and by their acts invited the public to travel over it, the duty then becomes absolute to keep it in repair."

· Angell on Highways, in section 263, p. 304, says : " In cities the sidewalks are considered a part of the public streets, and as such are to be kept, like the streets themselves, in a safe and convenient state of repair through their entire width. And this obligation is not varied or discharged by the exercise of the right of an adjoining owner of land to use the street or sidewalk for some private purpose, not inconsistent with the right of the public."

The city of Greencastle, having improved Jackson street and made a sidewalk on the west side, was not bound to make a sidewalk on the east side, and would not have been liable for an injury occasioned by natural obstacles on such side of the street. If the natural grade of the east side of such street had not been changed by the city or by others, to the knowledge of the city, it could not be said that the east side of said street had been opened for the public accommodation, and the public invited to travel thereon. But it is shown that there had been for many years a sidewalk on the east side of Jackson street, from the public square to Jones' hotel, and that Jones had, with the knowledge of the city authorities, made a pavement along his property and left at the south end a perpendicular fall of about four feet. After the sidewalk was completed, he found that the mouth of a culvert at the south end of it was obstructed, and he asked the common council to remedy it, and the city extended the mouth of the culvert about twenty feet and covered the culvert with earth and the refuse rock, and in this way raised the alley at the south end of the pavement, so that the perpendicular fall was only about two feet. Thus, we find three things to be true in reference to

the sidewalk on the east side of Jackson street. 1st. That a sidewalk had existed and been used for many years by the public, from the public square to the Jones House. 2d. That Jones had, with the knowledge of the city, made a sidewalk along his property and left at the south end of it a perpendicular fall of four feet. 3d. That the city so far remedied the obstruction as to reduce the fall from four to two feet.

In the quotation which we have made from Judge Dillon, the law is said to be, that the city "is liable for injuries caused by its neglect or omission to keep the streets in repair, as well as for those caused by defects occasioned by the wrongful acts of others." This being the law, the appellee was liable for the wrongful acts of Jones, the city having knowledge of the dangerous fall, and for its neglect to repair the same.

While the appellee would not be liable for an injury resulting from a natural obstruction in a street that had not been improved, it would be liable for such injury caused by an excavation or artificial obstruction placed there by the city or others, the city having due notice and having failed to make the necessary repairs.

But the objection recurs that the city is not liable, because the place where the injury occurred was out of the travelled path and beyond the point where the sidewalk on the east side of said street had been opened to public accommodation.

We are satisfied from a careful examination of the cases referred to by counsel for appellee, that they do not support the position assumed.

The case of *Whitney* v. *Town of Essex, supra,* was correctly decided upon the facts of the case. It was shown that the town had provided a way sufficiently wide and suitable for the passage of all travel, and that it was in good and sufficient repair at the time of the alleged injury.

The court say: "The accident to the plaintiff did not happen upon said travelled track, nor by reason of any defect

Higert *v*. The City of Greencastle.

in it, nor by reason of his being forced or misled from it."

The foot path where the plaintiff was injured was from fifteen to twenty feet from the travelled track, and in no manner connected with it, and with this path the town had never had any thing to do. The court say: "It is the settled duty of the town not only to keep the track in good and sufficient repair for the purposes of public travel, but equally its duty to keep the margins in a reasonably safe condition against injurious consequences of accidents, such as usually do, and are most likely to occur in the course of public travel. The injury in this case was not the result of any accident happening in travelling along the highway."

Again the court say: "There may be cases in which the question of the sufficiency of the highway for public travel may involve the condition of the margin and side paths."

Again the court say: "This case is also distinguishable from those cases in which towns have been held liable in respect to travelled tracks so left as to mislead the traveller as to which is the lawful public highway."

We call attention to an important modification contained in the opinion in the case of *Smith* v. *Wendell, supra*. The quotation is as follows: "They are not liable for such obstructions in portions of the highway not a part of the travelled path, *and not so connected with it that they will affect the security or convenience for travel of those using the travelled path.*"

With the qualification contained in that portion of the above opinion italicized, we think the ruling in that case was correct and in harmony with the weight of authority, as we shall hereafter show.

The opinion in the case of *Carolus* v. *The Mayor, etc.*, *supra*, is so short that we reproduce it entire, as follows: "The intestate came to his death by heedlessly using as a path an embankment of about two or three feet in width, raised by the contractors for regulating the Eighth avenue; never intended, designated, or by any implication used or authorized to be used as a foot path, by the defendants, or

VOL. XLIII.—38

any one under them. It is shown that the carriage way, which he could have used, was no more than inconvenient; no risk was encountered by pursuing it, which very slight care would not avoid; none, it seems, could occur, except in meeting carriages. It was from nine to twelve feet wide. There were other safe and not inconvenient modes of getting to his house." We are unable to see the application of the above case to the one under consideration.

The facts upon which the ruling in *Rice* v. *Montpelier, supra,* were based are stated to be as follows :

" The plaintiff, it appears, was passing the place in a dark night in November, with a horse and sleigh, and no obstacle existed to passing in the usual track, except want of snow. Snow existed in the ditch, and between that and the made road; and the plaintiff, for no reason apparent, except to get on to the snow, passed along in the ditch, and his horse run into the hole; and hence the damage occurred."

The court say : " It would seem, if this verdict is sustained, that towns must not only be bound to construct good and sufficient roads, of sufficient width, and properly guarded, so as to make travelling safe against all ordinary accidents, but must also put and keep the ditches by the side of the road, usually fitted to conduct water from the road, in an equally practicable condition for travelling; so that, when any one prefers, to obtain snow, or avoid dust, or from any other reason, to travel one side of the road, rather than in it, he may do so under the same security and indemnity as those who travel in the way provided for them. This, we think, would be an unwarrantable extension of the liabilities of towns."

In the above case, the accident occurred upon an ordinary highway in the country, where the same strictness is not required in regard to the margins of the road as is in the streets of towns and cities. We think the ruling was right, but does not sustain the position contended for by appellee.

In the case of *Shepardson* v. *Colerain, supra,* we desire to make an additional quotation from the opinion of the court,

Higert *v.* The City of Greencastle.

which will more fully and clearly show the ground of the ruling.

The court say: "It was asked by the counsel for the plaintiffs, whether, if the wrought road through the lane had been obstructed by snow, and there had been used, for the public travel through the lane, some other part of the highway, and by reason of some obstruction therein, an injury had been sustained, the party thus injured might not have recovered damages, although travelling without the wrought road appropriated for the summer travel? If he might, it was then inquired, why not here? The cases are by no means parallel. In the case supposed, the path travelled on is, for the time, the made way for travellers passing over the lane; the lane being, throughout its whole length, a public way. The traveller does not leave the ordinary route appropriated for travellers, for the purpose of entering upon a private way. But in the case at bar, there was no such newly appropriated way without the limits of the made way used by the public, for the purpose of continuing their travel upon a public way. The plaintiff left the wrought road, not for the purpose of finding a better road upon the public way, or with a view of continuing to travel upon the highwc y; but he designedly left the wrought road, for the purpose of continuing his travel upon his private way over his own land. This he might do; but at his peril, if injured thereby, he fully knowing the obstruction upon the lane road before entering upon his journey. The way which is set forth in the declaration as the road out of repair, was found by the jury to have been properly constructed, to have been of proper width for travellers to pass and repass, with proper facilities to turn upon the road, and to have been in all respects such a road that the plaintiff might have travelled with safety, continuing thereon."

In *Howard* v. *North Bridgewater*, 16 Pick. 189, the court say: "We think it clear that this provision does not mean that the whole of the road, from one boundary to the other, shall be made smooth. In many cases all the property of the

town would be insufficient for that purpose. There may be ledges of rocks, ravines, and water-courses in the road. It cannot be expected that towns shall, in all cases, make bridges the whole width of the road, or fill up ravines, or cut down ledges of rock. But there may be such obstructions out of the travelled path, as will render the road unsafe; such, for instance, as would frighten horses."

We have examined all the cases relied upon by counsel for appellee, and are quite clear that they do not support the doctrine contended for by them.

We have made a careful examination of many authorities, other than those cited by counsel for appellee, and make extracts from a few of them.

In Angell Highways, page 303, sec. 262, the law is stated as follows: "It is, moreover, no justification for a defect or obstruction that it is without the travelled path, if from its nature or position it is dangerous to such as use the road.

"Thus, in *Cobb* v. *Standish,* in an action for the loss of a horse, in a deep mud hole, filled with water, partly within and partly without the limits of the located highway, and which, to the common observer, had the appearance of being a convenient watering place for horses, WESTON, C. J., remarked: 'Towns are not obliged to furnish watering places for the public convenience, but when they are provided by nature in the highway, they ought not to be suffered to become pitfalls, first to allure and then to destroy horses or other animals turned aside to partake the refreshment to which they are thus invited.' And if a road pass over a bank or bridge, or along the verge of a precipice, it is the duty of the town properly to guard the edge of the road by walls or railings."

In *Sparhawk* v. *City of Salem,* 1 Allen, 30, CHAPMAN, J., says: "But none of the cases cited sanction the doctrine that railings are necessary merely to prevent travellers from straying out of the highway, when there is no unsafe place immediately contiguous to the way. On the contrary, these cases require the party to show that the defect which caused the

injury existed either in the highway, or so immediately contiguous to it as to make it dangerous to travel on the highway itself."

In *Alger* v. *City of Lowell*, 3 Allen, 402, HOAR, J., says: " The true test, on the contrary, is not whether the dangerous place is outside of the way, or whether some small strip of ground not included in the way must be traversed in reaching the danger, but whether there is such a risk of a traveller, using ordinary care, in passing along the street, being thrown or falling into the dangerous place, that a railing is requisite to make the way itself safe and convenient."

It was held in *Murphy* v. *Gloucester*, 105 Mass. 470, that " as a part of this obligation, they are bound to erect suitable railings, or other barriers, where a dangerous place exists in such close proximity to the highway as to render the use of the highway for purposes of travel unsafe. But they are not obliged to erect barriers to prevent or warn travellers from straying from the highway, where there is no dangerous place within such close proximity."

Inasmuch as the opinion in *Davis* v. *Hill*, 41 N. H. 329, is very much in point and ably reviews several other cases having a strong bearing upon the question under consideration, we make an extended quotation therefrom.

The court say: "It seems entirely clear, upon the authorities, that the want of a sufficient railing, barrier, and protection, to prevent travellers passing upon a highway from running into some dangerous excavation or pond, or against a wall, stones, or other dangerous obstruction, without the limits of the road but in the general direction of the travel thereon, may properly be alleged as a defect in the highway itself. *Willey* v. *Portsmouth*, 35 N. H. 303; *Coggswell* v. *Lexington*, 4 Cush. 307; *Hayden* v. *Attleborough*, 7 Gray, 338; *Jones* v. *Waltham*, 4 Cush. 299; *Palmer* v. *Andover*, 2 Cush. 600.

"In *Palmer* v. *Andover* the alleged defect in the highway was the want of a railing between the highway and an

embankment existing against a mill-pond, at an angle of the road as it passed down the hill. It appeared that in descending the hill, before reaching this point, at a part of the road entirely free from defect, the horses became detached from the plaintiff's carriage by the purely accidental coming off, without the plaintiff's fault or negligence, of the nut of a bolt, which attached the pole with the traces and other harness of the horses thereto; that thereupon the horses, so detached from the carriage, following the road, turned to the right and passed safely over the bridge, while the carriage kept nearly straight forward, passing to the left of the travelled way, and thence over the embankment into the mill-pond. The court decided that the defendants were liable for the injury thus resulting, if a rail or other barrier were, in the judgment of the jury, necessary for the proper security of travellers, and would have prevented the happening of the accident.

" In *Coggswell* v. *Lexington* it was holden, that the defendants were liable for an injury happening to a traveller, while in the exercise of ordinary care, in consequence of driving his wagon against a post which stood without the limits of the highway, but near the line thereof, and within the general course and direction of the travel thereon, and rendered the travelling dangerous.

" In *Jones* v. *Waltham* it was substantially decided, that, if there were dangerous pits, excavations, precipices, walls, stones, or other obstructions, situated without the limits of the located highway, but so near it and so situated that they would, without barriers or guards, endanger the safety of passengers using the travelled or made part of the road, with ordinary care and diligence to avoid exposure to injury, it was the duty of the town to guard against such pits, excavations, precipices, walls, stones, and other obstructions, by means of a railing, or in some other proper mode; and, if they neglected to do so, and in consequence of such neglect any person using the

road sustained an injury, the town would be liable for the damage suffered.

"In *Hayden* v. *Attleborough*, where the plaintiff sued for an injury occasioned by her driving, in the evening, into a cellar beyond the limits of a highway, the court held, sustaining fully the instructions of the judge at *nisi prius*, that, where the limits of a highway are not indicated by any visible objects, and there is nothing to show a person, driving thereon in the evening, that the course he is pursuing is not within the way intended for the public travel, the town is liable for an accident to a traveller resulting from a defect within the general course and direction of the travel over the highway, although beyond the limits of the located way, if so near thereto as to render the travelling thereon dangerous, and there is nothing to give travellers notice of the defect until too late to avoid it."

No formal act of dedication to the public use of a street or sidewalk is required on the part of the municipal authorities. When a street has been so improved, or a sidewalk so constructed, as to induce a person of ordinary prudence to believe that such street or sidewalk was intended for public travel, the same should be regarded as opened for the public accommodation; and it will make no difference whether the sidewalk was constructed by the corporation or the owners of adjoining property. This rule would not apply where one owner of property on a street had made a pavement along and in front of his property. There should be such length and continuity of pavement as to invite the public travel. It was shown that there had existed for many years, a sidewalk on the east side of Jackson street between the public square and Jones' hotel; that Jones, with the knowledge and tacit consent of the authorities of the city, had constructed his pavement on the grade established by the city, and that the city had afterward extended the culvert some twenty feet. We are of the opinion that the sidewalk from the public square to the south end of Jones' pavement should be regarded as having been opened for the public accommoda-

tion, and that it had become the absolute duty of the city to keep it in repair and safe for public travel.

It is abundantly established by the authorities heretofore cited, that if there are dangerous pits, excavations, precipices, walls, stones, or other obstructions, situated without the limits of the located highway or travelled track, but so near to it and so situated that they would, without barriers or guards, endanger the safety of passengers using the travelled or made part of the road, with ordinary care and diligence to avoid exposure to injury, it is the duty of the city or town to guard against such defects or obstructions by means of a railing, or in some other proper mode; and if such city or town neglects to do so, and in consequence of such neglect any person using the road sustains an injury, such city or town will be liable.

It is equally as well settled that, where the limits of a highway are not indicated by any visible objects, and there is nothing to show a person driving, riding, or walking thereon, that the course he is pursuing is not within the way intended for the public travel, a city or town is liable for an accident to such person, resulting from a defect or obstruction within the general course and direction of the travel over the highway, although beyond the limits of the located highway or travelled track, if so near thereto as to render the travelling thereon dangerous, the person receiving the injury having used ordinary care and diligence to avoid injury. It is quite obvious that the case was not tried in the court below according to the principles of law herein enunciated, and that there must be a new trial.

The judgment is reversed, with costs; and the cause is remanded, with directions to the court below to grant a new trial and sustain the demurrer to second and fourth paragraphs of the answer, and for further proceedings in accordance with this opinion.