No. 9466.

## THE CITY OF EVANSVILLE v. WILTER.

CITY.— *Officers.— Street.— Negligence.— Obstruction.— Notice.— Presumption.—* City officers must exercise reasonably active vigilance to keep streets in a safe condition, and where a dangerous obstruction has existed for months notice of it will be presumed.

The City of Evansville *v.* Wilter.

SAME.—*Excessive Damages.*—One thousand dollars, in a suit against a city to recover for a personal injury received in consequence of an obstruction upon a sidewalk, are not excessive damages where such injury confined the plaintiff to his room for sixteen weeks, required him to use crutches three months more, caused him great pain for a longer period, rendered entire recovery doubtful, and entailed considerable expense for medical aid and nursing.

SAME.—*Complaint.—Diligence.—Arrest of Judgment.—Notice.*—A complaint in such action, which describes the street, the obstruction and the injury, and states facts which show that the city, if diligent in the discharge of its duty, would have had notice of the obstruction, is good on motion in arrest of judgment.

SAME.—*Argument of Counsel.—Misconduct.— Instruction.—Harmless Error.*— Upon the trial, in such action, it is error to permit counsel for the plaintiff, over objection, in argument to the court, in the presence of the jury, upon the question of the measure of damages, to read extracts from reported cases, showing large damages held not excessive; but such error is cured by a direction of the court to the jury to the effect that the case before them must be determined upon the evidence, uninfluenced by the damages given in other cases.

INSTRUCTIONS.—*Practice.*—There is no error in refusing to give a correct instruction which is fairly embraced in instructions which have been given.

From the Vanderburgh Circuit Court.

*C. Denby* and *D. B. Kumler*, for appellant.

*W. M. Blakey* and *P. W. Frey*, for appellee.

MORRIS, C.—The appellee sued the appellant to recover damages for an injury sustained by falling over and upon a large stone while walking along one of the sidewalks of the appellant.

The complaint states that the appellant is a municipal corporation, and that it is its duty to keep its streets and sidewalks in a reasonably safe condition, etc.; that Fourth street, in said city, is one of its principal streets and thoroughfares; that on the night of the 26th of September, 1880, there was, and had been for a long time previous thereto, a large stone lying on the sidewalk, near the center thereof, on said Fourth street; that the appellant had negligently, wrongfully and unlawfully allowed and permitted said stone to so lie upon said

sidewalk, both in the day and night time, for several months, to the great danger of persons travelling along said sidewalk; that on said night, it being very dark, the appellee was walking along said sidewalk, at said place, and being wholly unaware of said stone being on said sidewalk, and there being no light to warn him of said stone, and not seeing and not being able to see the same because of the darkness, he accidentally, without fault on his part, struck said stone so lying upon said sidewalk, with his feet and legs, and violently fell upon the same, and thereby received serious injury, which is particularly described.

The appellant answered the complaint by a general denial. The cause was submitted to a jury, who returned a verdict for the appellee. The appellant moved the court for a new trial, which motion was overruled. The appellant then moved in arrest of judgment. This motion was also overruled, and final judgment rendered for the appellee.

The rulings of the court upon the motions for a new trial and in arrest of judgment are assigned as errors.

The following statement is contained in the bill of exceptions:

"During the opening argument on behalf of the plaintiff by the attorney for the plaintiff, the counsel of the plaintiff called the attention of the court, and read to the court in the presence of the jury, the following cases reported in the Southern Law Review, where, in a collision, a passenger had his leg broken and received some flesh wounds upon his head, in consequence of which he was confined to his house about five months, and obliged to go on crutches for three or four months afterwards, with one leg left somewhat shorter than the other, but that at the time of the trial his usual health was restored; a verdict of $6,000 was held excessive and reduced to $4,000. Also, where a passenger's arm was broken, the verdict of the jury was so excessive that the court reduced it to $2,000.

"That said extracts were read by said counsel connected with the law of compensatory damages, and in the conclusion of

said counsel's argument, and the defendant, by its counsel, at the time objected to said counsel reading said verdicts to the court in the hearing of the jury, because such verdicts gave the jury improper information. Whereupon the court stated to and charged the jury, that the fact that juries found large verdicts in other cases should have no influence with the jury trying this case in making up their verdict, and that each case must be tried upon the facts presented in the evidence; but the court overruled the objection of defendant, and permitted counsel for plaintiff to read the verdict with other parts of the case above set out, to which ruling of the court the defendant excepted."

The reading of the matter thus set out in the bill of exceptions is one of the grounds upon which a new trial is asked. We understand, from the record, that during, or at the close of, the opening argument of counsel for the appellee, in discussing the question of compensatory damages to the court, the matter above recited was read to the court in the presence of the jury, over the objection of the appellant. It is clearly inferable from the bill of exceptions, that it does not contain all that was read by the appellee's counsel to the court, from the cases referred to. It is difficult, if not impossible, to see how or in what way the reading of the above extracts could enlighten the court upon the principles involved in the discussion of the question of compensatory damages. It is almost impossible to resist the conclusion that the extracts from the cases which counsel read to the court were not read with a view to enable the court rightly to decide upon the law as to compensatory damages. On the contrary, we should conclude, but for the action of the court, that the purpose was to reach and influence the jury. The court seems to have regarded the information derived from the matter read by counsel for the appellee, and objected to by the appellant, as germane to the question of law then before it, and, therefore, for its information alone, permitted the counsel to.

proceed, at the same time instructing the jury that the matter read should not influence their verdict.

We think the instruction given by the court to the jury must be held to have rendered the reading of the objectionable matter harmless. The extracts were not read to the jury, but to the court. The court told the jury that what had been read should not influence their verdict—that each case must be decided upon its own merits and upon the evidence in the case. Competent triers could not fail to understand the instructions of the court.

It has been often held that where the court instructs the jury that they should not consider testimony improperly admitted, the verdict will not be disturbed because of the admission of such improper evidence. So here, if the matter read by counsel to the court, in the hearing of the jury, was calculated improperly to influence them, the instruction given them by the court must be held to have freed the jury from such influence.

Arguments upon questions of law arising during the progress of a trial, not always relevant, are constantly addressed to the court in the presence of the jury. This is not objectionable, for the reason that the jurors are supposed to be sufficiently intelligent to know that such arguments are addressed, not to them, but to the court, upon questions to be decided by the court, and not by them; and that they will not, therefore, be improperly influenced by such arguments. Here the extracts were read in argument to the court, not as a part of the argument to the jury. This fact and the instruction given to the jury by the court distinguish this from the case of *St. Louis, etc., R. W. Co.* v. *Myrtle*, 51 Ind. 566, and cases there cited.

The practice of reading from law-books irrelevant statements and verdicts, in arguments addressed to the court in the presence of the jury, is not to be commended; indeed, it can not be too severely condemned; but, in view of the instructions given by the court to the jury in this case, and the fact

that we can not discover that the matter read had any influence upon the jury, the error of the court must be regarded as harmless. The case of *Porter* v. *Choen*, 60 Ind. 338, is unlike the case now before us. In the former case, the extracts were not read upon any question of law then before the court; nor were the jury instructed, as in this case, that they were not to regard what was read. We approve the case referred to, but think it not in point in this case.

The appellant also insists that the court erred in refusing to give instructions asked by it, and such refusal is also one of the causes upon which a new trial was asked.

Counsel say : " There is no question but that every word of that instruction is the law. The court did give other instructions embodying the idea that actual or implied notice to the city was necessary to be proved before there could be a recovery against it."

We have examined the instructions asked by the appellant and those given by the court, and have come to the conclusion that the instructions given fairly covered those asked by the appellant, and that they contained a fair statement of the law upon the whole case. There was, therefore, no error in refusing to give the instructions asked.

The appellant also insists that the verdict is not sustained by sufficient evidence.

The appellee testified to his injury ; to the fact that he was properly walking on the sidewalk in the night time ; that he did not and could not see the obstruction ; to the size of the stone on the sidewalk, and its distance from the wall on the inner side of the walk—that it was one and a half or two feet from the fence or wall.

Jacob Schlessinger testified to the size of the stone—12 to 14 inches—and that it was from 12 to 14 inches from the fence ; also, that he had seen the stone on the sidewalk for months before, sometimes close to the fence, but generally in the same place ; that Fourth street is a very public thoroughfare, and much travelled.

Fred Wohnseidler testified that he knew the premises where the appellee was, on sidewalk, on Fourth street, in front of Caden's stone yard; that there was always a rock in front of the stone yard to hold the gate open; noticed stone there as a prop for the gate for a year, all the time he was in the engine house. Other witnesses testified to the extent of the appellee's injuries.

This testimony certainly tended to support the verdict. It is said that it does not show that the appellant had notice, actual or constructive, of the obstruction which caused the injury. But if the obstruction had been upon the sidewalk for a year, as testified by Frederick Wohnseidler, or for months, as stated by the witness Jacob Schlessinger, the appellant must be held to have had notice of the fact. Where an obstruction has been in the street or sidewalk of a city for such a length of time as to be generally known to the people of the neighborhood, it is just and reasonable to suppose that the officers of the city, whose duty it is to keep the streets in safe condition, have notice of such obstruction. Such officers should exercise a reasonable degree of active vigilance in regard to the condition of the streets of the city. It is their duty to see to it that the streets are in proper repair and reasonably safe. The discharge of this duty requires on their part the exercise of a reasonable degree of diligence and attention to the condition of the streets. They can not, it is true, be reasonably supposed to know of the existence of an obstruction as soon as it is created, but, if reasonably vigilant, an obstruction can not exist for months in a public street without their knowledge. Dillon Mun. Corp., section 790; *Higert* v. *City of Greencastle,* 43 Ind. 574; *City of Indianapolis* v. *Scott,* 72 Ind. 196; *City of Logansport* v. *Justice,* 74 Ind. 378, 385 (39 Am. R. 79); *Todd* v. *City of Troy,* 61 N. Y. 506, and cases cited.

There was testimony introduced by the appellant tending to show that it had not actual notice of the obstruction, and that the circumstances were such as not to impute to it con-

structive notice.   But this court will not weigh the conflict-
ing testimony.   We think there was testimony in the case
legally tending to support the verdict. We can not, therefore,
disturb it, on the ground that there is not sufficient evidence.

It is said that the damages—$1,000—are excessive.   We
think they were not.   The appellee was confined to his room
for sixteen weeks; had to use crutches for some three months
longer.   He was still, at the time of the trial, suffering from
the injury, and medical witnesses testified that it was doubt-
ful whether he would ever entirely recover from the injury to
his knee.   He suffered great pain, and was put to consider-
able expense in procuring medical attendance, medicine and
nursing.   We think the damages, if not moderate, can not be
regarded as at all excessive.   We can not think, as suggested by
the appellant, that the damages were enhanced by the extracts
read to the court from law-books by the appellee's counsel.

The appellant complains of the ruling of the court upon
its motion in arrest of judgment.  The ground of this mo-
tion is that the complaint does not contain a cause of action.
We think it does. It describes the street, the obstruction, the
injury, and facts from which the city must, if diligent in the dis-
charge of its duty, have had notice of the obstruction. There
was no error in overruling the motion.

PER CURIAM.—It is ordered, upon the foregoing opinion,
that the judgment below be affirmed, at the costs of the ap-
pellant.