## CITY OF VINCENNES *v.* SPEES.

[No. 4,712.   Filed May 10, 1905.]

1.  PLEADING.—*Motion to Make Complaint More Specific.—Amended Complaint on File.*—A motion to make the "complaint" more specific presents no question on appeal where an amended complaint was afterwards filed.   p. 393.

2.  SAME. — *Demurrer. — Nonjoinder of Defendant.* — A demurrer for

nonjoinder of a defendant, which fails to show any reason that such nonjoined person is a necessary party, is insufficient.   p. 393.

3.   PLEADING.—*Demurrer.—Form of.*—A demurrer to the "complaint" is sufficient to challenge the sufficiency of the "amended complaint" where such demurrer was filed subsequently to the filing of such amended complaint.   p. 393.

3a.  SAME.—*Demurrer to Complaint.—Form of.*—A demurrer that "the complaint does not state facts sufficient to constitute a good cause of action" is sufficient, "good" being treated as surplusage.   p. 394.

4.   SAME.—*Complaint.—Words and Phrases.—"Along."—"Edge."*—A complaint alleging that an obstruction was "along" and on the "edge" of a sidewalk can not be construed to mean that such obstruction was "in" or "upon" such sidewalk.   p. 394.

5.   MUNICIPAL CORPORATIONS. — *Lighting Streets. — Failure. — Negligence.*—It is not negligence for a municipal corporation to fail or refuse to light its streets, that being a governmental function.   p. 394.

6.   SAME.—*Streets.—Defects.—Care Required.*—A municipal corporation is liable to persons injured through its failure to exercise ordinary care in keeping its streets in a safe condition.   p. 394.

7.   SAME.—*Streets.—Defects Along Side of.—Care Required.*—It is the duty of a municipal corporation to erect barriers or otherwise warn travelers of excavations or other dangerous defects along and close to the edge of its streets.   p. 395.

8.   SAME.—*Streets.—Defects Caused by Third Person.—Duty.*—It is the duty of a municipal corporation to maintain its streets in a reasonably safe condition, regardless of who may cause defects therein.   p. 395.

9.   PLEADING. — *Defect Out of Street Proper. — How Alleged.* — The want of a barrier or railing to protect travelers from running into excavations or ponds, or against a wall, stones or other dangerous obstructions along the line of travel on a street, may be alleged as a defect in such street.   p. 396.

10.  SAME.—*Negligence.—Sidewalk.—Obstruction Along.*—A complaint alleging that a municipal corporation permitted a "large stone" to remain "along the sidewalk, at the edge thereof"; that plaintiff, passing along, in the exercise of due care, on a "very dark night" ran against said stone, thereby greatly injuring herself; that there were no barriers, guards or lights erected to warn travelers of such danger; that she was ignorant of such defect and that defendant knew of it, is insufficient.   p. 397.

From Gibson Circuit Court;  *O. M. Welborn,* Judge.

Action by Julia M. Spees against the City of Vincennes. From a judgment on a verdict for plaintiff for $1,600, defendant appeals.   *Reversed.*

*John Wilhelm, L. C. Embree, Luther Benson* and *Emison & Moffett,* for appellant.

*W. A. Cullop, G. W. Shaw, W. E. Stilwell* and *Henry Kister,* for appellee.

Wiley, J.—This action originated in the Knox Circuit Court, and, on change of venue, was tried in the court below. Appellee was plaintiff, and sued appellant to recover damages alleged to have resulted from its negligence. The amended complaint is in a single paragraph, to which a demurrer for want of facts was addressed and overruled. Appellant's motion to require appellee to make her complaint more specific was also overruled. Trial by jury, resulting in a verdict in favor of appellee. Appellant's motion for a new trial was overruled, and judgment pronounced upon the verdict. The several rulings referred to are assigned as errors.

In her amended complaint the appellee avers: "That the defendant on said date [October 9, 1899], and for a long time prior thereto, carelessly and negligently permitted and suffered a large stone, unguarded and unprotected, to remain along the sidewalk, at the edge thereof, on Seventh street, near Barnett street, and that the same was suffered and permitted so to remain there by the defendant without any guards, danger lights or any other means of notifying persons of its presence, who were passing along said street in the night-time; that said plaintiff on said date, and in the night-time when it was very dark, was passing along the sidewalk on said Seventh street in a careful and prudent manner, while the night was very dark, and while so passing along she was unable to see or discover said obstruction aforesaid on account of the want of guards or light on said street, and danger lights to warn passengers thereon, and persons using said street, of the presence of said obstruction. Plaintiff says while she was passing along said street in a careful and prudent manner, without any negli-

gence on her part, she ran against said obstruction, and was violently thrown to the ground, so that she was maimed, bruised, wounded and lacerated, and suffered great pain of body and mind; that she ran against the same because of the defendant's negligence aforesaid, in not having said street lighted, not having danger-signals to show where said obstruction was, and not having the same guarded so that persons using the sidewalk could avoid a collision with said obstruction; that the same was permitted, on account of the negligence of the defendant, to remain at the edge of said sidewalk, so that persons using the same in the night-time, as was the plaintiff on this occasion, were likely to run against the same and be injured on account thereof; and that the plaintiff so sustained her injury, all on account of the negligence of the defendant, and without any fault or negligence on her part."

It is further charged in the complaint that, by virtue of an ordinance of said city, appellant should have had said street lighted by lights which were provided for said purpose, but that on the occasion of her accident the same were not lighted, and that appellant had no danger-signal placed at said stone, or guard of any kind to warn persons of the presence of the same, and to avoid collision with it. The complaint then describes minutely the injuries sustained by appellee, and concludes as follows: "That all of said injuries were inflicted on account of the negligence of the defendant aforesaid, which said defendant had permitted and suffered said stone to remain at the edge of the sidewalk, and so near thereto that persons who were using said sidewalk were likely to collide with said stone, and that the defendant was well aware of its maintenance, or could have been by the exercise of diligence on its part, but that the plaintiff had no knowledge whatever of its presence or existence, and was unaware of its being so situated, and had no knowledge of its existence whatever."

1. The first question discussed by counsel is presented by the action of the court in overruling appellant's motion to make the complaint more specific. The motion and the ruling thereon are brought into the record by a bill of exceptions. The case was tried upon the issue joined by the answer to the amended complaint. There is a motion in the record, addressed to the complaint, asking that it be made more specific, which motion was filed on May 14, 1900. On May 17 following, the record shows that the motion was sustained in part and overruled in part, and that thereupon, on the same date, the appellee filed her amended complaint. So far as the record shows, no motion to make the amended complaint more specific was ever filed, and therefore the motion that is in the record does not present any question for decision.

2. On the 21st of May, 1900, the appellant addressed a demurrer to the amended complaint upon two grounds: (1) That there was a defect of parties defendant, in that the Citizens Light Company of Vincennes was a necessary party, and should have been joined; (2) that "the complaint does not state facts sufficient to constitute a good cause of action." This demurrer was overruled. There is no merit in the first ground of demurrer, for there is no showing of any character that the Citizens Light Company of Vincennes was a necessary party.

3. It is urged on behalf of counsel for appellee that the second ground of demurrer is not well taken, and does not present any question for review, because it is not in harmony with the provision of the statute. They urge that the averment that "the complaint does not state facts sufficient to constitute a good cause of action" is not equivalent to the averment that it "does not state sufficient facts to constitute a cause of action." Technically, so far as the demurrer itself is concerned, it does not show upon its face that it was addressed to the amended complaint, but, as it was filed sub-

sequently to the filing of the amended complaint, we think it is sufficient.

3a. The objection urged to the form of the demurrer is highly technical, and not well taken. If a demurrer uses language equivalent to that of the statute, it is sufficient. *Leach* v. *Adams* (1899), 21 Ind. App. 547; *Ross* v. *Menefee* (1890), 125 Ind. 432. Here the demurrer is within the rule stated. The exact language of the statute is employed, and the word "good," as used, will not destroy the force of the pleading, but will be treated as surplusage.

4. Under the averments of the complaint, it can not be said that the stone described was in or upon the sidewalk, and hence in that sense was not an obstruction. The words "along" and "edge," referring to the sidewalk, are relative terms, and do not, with any definiteness, describe the location of the stone. The words used, and the connection in which they are used, will not bear the construction that they convey the thought that the stone was in or upon the sidewalk. Of this we are clear.

5. If the complaint is sufficient to withstand the demurrer, it must be upon the ground that the stone was such a dangerous obstruction and in such close proximity to the sidewalk that it was the duty of the city, in the exercise of reasonable care, and for the protection of travelers, to erect a suitable barrier, and maintain a light at night, so that its dangers might be avoided. Negligence can not be imputed to a city for a failure to light its streets, for that is a governmental function, and for such failure it is not liable. *City of Vincennes* v. *Thuis* (1902), 28 Ind. App. 523, and authorities there cited.

6. Cities are not insurers of the safety of their streets and alleys. They have performed the full measure of their duty in this regard when they have made them reasonably safe, and kept them in a reasonably safe condition for persons traveling in the usual modes by day and by night, and while such travelers are exercising ordinary care. Elliott,

Roads and Sts. (2d ed.), §615; *City of Indianapolis* v. *Cook* (1884), 99 Ind. 10; *Town of Knightstown* v. *Musgrove* (1888), 116 Ind. 121, 9 Am. St. 827; *Town of Gosport* v. *Evans* (1887), 112 Ind. 133, 2 Am. St. 164.

7. This duty extends not only to the traveled way of streets and alleys, but to adjacent conditions. Ordinarily fences or barriers are not required along highways to prevent travelers from straying out of their limits, but if there are excavations or other dangerous defects or obstructions close to the way, the city or local authorities are required to erect barriers or take other proper precautions to warn travelers of the danger. Elliott, Roads and Sts. (2d ed.), §619; *Woods* v. *Inhabitants of Groton* (1873), 111 Mass. 357; *Halpin* v. *City of Kansas* (1882), 76 Mo. 335; *City of Delphi* v. *Lowery* (1881), 74 Ind. 520, 39 Am. Rep. 98; *City of Portland* v. *Taylor* (1890), 125 Ind. 522; *Higgins* v. *City of Boston* (1889), 148 Mass. 484, 20 N. E. 105.

Another rule which seems to be well fortified by the authorities is that, wherever railings or barriers are necessary for the safety of travelers, it is negligence in the municipality to fail to construct and maintain them. Elliott, Roads and Sts. (2d ed.), §618; *Orme* v. *City of Richmond* (1884), 79 Va. 86; *Olson* v. *City of Chippewa Falls* (1888), 71 Wis. 558, 37 N. W. 575; *Borough of Pittston* v. *Hart* (1879), 89 Pa. St. 389.

8. The rules above stated are applicable whether the city caused the obstruction, or whether it was caused by a third person; provided it had notice, either actual or constructive. It is as much the duty of a municipality to cause the removal of an obstruction to the public highway, or to guard against it, where it has been placed there by a third person, as it is if placed there by the city. If the obstruction is at the margin of the traveled way, it must not be such as to be either a trap or a snare. *Arey* v. *City of Newton* (1889), 148 Mass. 598, 20 N. E. 327, 12 Am. St. 604; *Hinckley* v. *Somerset*

(1887), 145 Mass. 326, 14 N. E. 166; *City of Wellington* v. *Gregson* (1883), 31 Kan. 99, 1 Pac. 253, 47 Am. Rep. 482.

9. In the case of *Davis* v. *Hill* (1860), 41 N. H. 329, the court said: "It seems entirely clear, upon the authorities, that the want of a sufficient railing, barrier, and protection, to prevent travelers passing upon a highway from running into some dangerous excavation or pond, or against a wall, stones, or other dangerous obstruction, without the limits of the road but in the general direction of the travel thereon, may properly be alleged as a defect in the highway itself."

In the case of *Higert* v. *City of Greencastle* (1873), 43 Ind. 574, the Supreme Court, at page 597, quote approvingly the paragraph just quoted from *Davis* v. *Hill, supra.* See, also, *Willey* v. *Portsmouth* (1857), 35 N. H. 303; *Coggswell* v. *Inhabitants of Lexington* (1849), 4 Cush. 307; *Hayden* v. *Inhabitants of Attleborough* (1856), 7 Gray 338; *Jones* v. *Inhabitants of Waltham* (1849), 4 Cush. 299, 50 Am. Dec. 783; *Palmer* v. *Inhabitants of Andover* (1849), 2 Cush. 600.

In the case of *Bunch* v. *Town of Edenton* (1884), 90 N. C. 431, it was said: "The side of a street is a material part of it, and must be kept free from danger, however the same may arise, as well as other portions of the street. Pits and other dangerous places immediately adjoining it and near to it make it perilous, and such places are nuisances. When these are permitted to exist and the streets are not properly protected against them, the latter are not in reasonable repair."

In the case of the *City of Aurora* v. *Colshire* (1877), 55 Ind. 484, the city was held liable for an injury resulting to the appellee by falling over a wall erected on private property. In that case the city was held liable for its failure to guard the dangerous condition by a railing. The conditions created a pitfall, but the decision did not rest

upon the sufficiency of the complaint, but upon the facts proved.

In the case of the *City of Delphi* v. *Lowery, supra,* it was held that where there is a dangerous place in or near the usual traveled part of the street of the city, the municipal authorities must use ordinary care to protect from injury persons who make lawful use of such street in a reasonably prudent manner; and such duty is not fully discharged by making the traveled part of the street safe, but such measures as ordinary prudence requires must be taken to prevent persons using ordinary care from falling into dangerous places along the sides, or in close proximity thereto.

In the case of *Drew* v. *Town of Sutton* (1882), 55 Vt. 586, 45 Am. Rep. 644, the court said : "If a railing is lacking where one is necessary to the safety of travelers, the traveled way itself is thereby rendered unsafe and out of repair. And it makes no difference whether this necessity for a railing is created by the condition of things within the limits of the way or without the limits, but in dangerous proximity to the way. In either case the question is : Does the safety of the traveler require a railing ? Is the road reasonably safe and sufficient without one ?"

There are many other cases that might be cited, which are in line with those to which we have referred, but we do not deem it necessary to do so.

10. The complaint describes the obstruction over which the appellee fell as a "large stone"; that it was unguarded and unprotected; that it was "along the sidewalk, at the edge thereof;" that appellee was passing along the sidewalk, using ordinary care and prudence; that it was dark, and she could not see; that she did not know the stone was there; that appellant had suffered it to remain there for a "long time prior" to the accident; that appellant knew of its maintenance, or could have known of it by the exercise of diligence; and that by reason of said obstruction and want of guards or warnings, she was injured.

As appellant was not bound to light its streets, the insufficiency of the complaint must be determined by its averment descriptive of the stone over which appellee fell. As shown by the complaint, the stone was not upon or in the sidewalk upon which appellee was traveling, and, if it was a dangerous obstruction, it must be shown to have been dangerous by the description and location given of it. It is clearly evident from the complaint itself that if appellee had remained in or upon the sidewalk she would not have been injured. We do not conceive it to be the duty of a city to erect guards or barriers against every and all dangers contiguous to the traveled way of its streets or sidewalks. This would be both impossible and impracticable. The municipality is only required to make such ways reasonably safe for travel.

The modern mode of improving streets is well understood. The sidewalk is generally elevated above the outer edge of the street, and the line of demarcation is designated by what is usually known as the "curb," which is on a level with the sidewalk. The distance from the top of the curb to the street surface varies, but is seldom less than from six to eight inches. It also often occurs that between the sidewalk and the adjacent property, marking the property line, copings are erected. These conditions are not free from dangers, for travelers, in the dark, are liable to wander from the sidewalk to the street, over the "curb," or stumble against the coping, and be injured. Such conditions would not render a city liable for damages, where injuries resulted therefrom.

The stone over which appellee fell is described as a "large" one. It does not appear from the complaint whether it was on the outside or inside of the sidewalk, and we can not look to the evidence, in this connection, to determine that question. It was "along the sidewalk, at the edge thereof," and it is immaterial which side it was on. The word "large," as here used, like "along" and "edge," is a relative term. It does not indicate the size or character of

the stone, except in a comparative sense.  A cobble-stone would be large as compared to a pebble.  If two houses are described, one large and the other small, no conception of their comparative sizes is conveyed, for the height, breadth and length of either could not be ascertained from the description.  Some men are designated as "large," while others are spoken of as "small," but, unless we can see them, we have no well-defined idea or understanding as to how large or how small they are.  An unusually large man or horse, seen upon streets, would naturally attract attention, while if they were of ordinary size they would pass unnoticed.  And so, from the description of the stone as given in the complaint, we have no conception of its size.  We can not say that it was dangerous to travelers using the sidewalk in the ordinary way.  True, it is averred, in substance, that it was the duty of the city to guard against danger by erecting barriers and lighting the same with a danger-signal. This averment of the complaint seems to us to be more of a conclusion than the statement of a fact.  It is the duty of a city to erect barriers, railings, etc., to guard against obstructions, pitfalls, etc., in streets, or adjacent thereto, only when it becomes necessary, from the nature and character of them, to protect travelers from dangers incident thereto.  These conditions must be first made to appear, before that duty attaches.

Let us here note the language of the complaint:  "That she ran against the same [the stone] because of the defendant's negligence  *  *  *  in not having said street lighted, nor having danger-signals to show where said obstruction was, and not having the same guarded so that persons using the sidewalk could avoid a collision with said obstruction." If appellee has not shown a condition requiring appellant to erect barriers and maintain danger-signals, then her complaint does not state a cause of action.  The conditions shown by the complaint are:  (1) A "large" stone "along the sidewalk, at the edge thereof;" (2) a failure to light

the streets as required by ordinance; and (3) its failure to erect a barrier and guard it with a danger-signal. A city is not required to make its streets and sidewalks absolutely safe, for, if this were true, it would become an insurer of the safety of travelers thereon, and such a burden the law does not enjoin.

We are confronted with these questions: What was appellant's duty with respect to this stone? Did it constitute a defect in the sidewalk? Did its presence, as described by the complaint, render the walk unsafe for travel in the ordinary modes? We do not conceive it to be the duty of a city to erect railings or barriers to prevent travelers from wandering off its sidewalks, unless it is apparent that injury would result. City of Hannibal v. Campbell (1898), 86 Fed. 297, 30 C. C. A. 63; 2 Dillon, Mun. Corp. (4th ed.), §1005; Chapman v. Cook (1872), 10 R. I. 304, 14 Am. Rep. 686; Sparhawk v. City of Salem (1861), 1 Allen 30, 79 Am. Dec. 700; Adams v. Inhabitants of Natick (1866), 13 Allen 429.

A traveler in the dark may chance to wander off of a perfectly constructed and safe sidewalk onto the street, and, in doing so, unexpectedly step therefrom to the street surface, which may be six inches or more below, as indicated by the curb, and be injured, yet it could not be successfully maintained that the city would be liable. He might also strike his foot against a natural elevation of the adjacent lot, of two or three inches or more, and thus be thrown to the earth and injured, and yet in such event a city would not be liable. These are dangers that are not reasonably anticipated, and can not be guarded against.

Judge Dillon correctly states the measure of a city's duty in this regard as follows: "A municipal corporation is not an insurer against accidents upon the streets and sidewalks. Nor is every defect therein, though it may cause the injury sued for, actionable. It is sufficient, we think, if the streets (which include sidewalks and bridges thereon) are in a rea-

sonably safe condition for travel in the ordinary modes, by
night as well as by day; and whether they are so or not is a
practical question, to be determined in each case by its par-
ticular circumstances." 2 Dillon, Mun. Corp. (4th ed.),
§1019.

In harmony with the rule declared by Judge Dillon, be-
fore a plaintiff can recover against a municipal corporation
for injuries sustained by defective streets or sidewalks, his
complaint must show that such street or sidewalk was not in
a reasonably safe condition for travel in the ordinary modes
by night as well as by day. Such facts must be pleaded as
will enable the court to say as a matter of law, as applied to
the facts, that they constitute actionable negligence. It is
not sufficient to show that injury resulted.

The duty to erect barriers or railings is not an absolute
one. As Judge Dillon says: "Thus towns are not neces-
sarily bound to fence or to erect barriers to prevent travelers
from getting outside of the road or way. A municipal cor-
poration may determine for itself to what extent it will
guard against mere possible accidents, and, if it be not guilty
of negligence, the judicial tribunals are not to say it shall
suffer in damages for not giving to the public more complete
protection, since that would practically take the administra-
tion of municipal affairs out of the hands to which it has
been intrusted by law." 2 Dillon, Mun. Corp. (4th ed.),
§1005.

In *Marshall* v. *Inhabitants of Ipswich* (1872), 110 Mass.
522, it was said: "It is well settled that towns are under
no obligation to light the highways, or to erect railings for
the mere purpose of preventing travelers from straying from
the traveled path. * * * The purpose of such railings is to
make the way itself safe and proper for use. They are re-
quired in the case of bridges, embankments or causeways,
and generally where excavations, deep water, etc., are so
near to the line of public travel as to expose travelers to

unusual hazards. * * * But we do not understand that the fact that land 'immediately contiguous to the highway' is uneven, or rocky, in a condition unsuited to be traveled upon, or encumbered with objects which if in the highway would be impediments or defects, is sufficient of itself to make it the duty of a town to set up a railing by the roadside."

In *Hubbell* v. *City of Yonkers* (1887), 104 N. Y. 434, 10 N. E. 858, 58 Am. Rep. 522, the court said: "That which never happened before, and which in its character is such as not naturally to occur to prudent men to guard against its happening at all, can not, when in the course of years it does happen, furnish good ground for a charge of negligence in not foreseeing its possible happening and guarding against that remote contingency." This language is applicable to the facts here pleaded.

Appellee, as shown by her complaint, ran against the stone because it was so dark she could not follow the walk. Appellant was not responsible for the darkness, and as we have seen it was not negligence for it to fail to light its streets. If she had remained on the sidewalk she would not have been injured.

So far as the complaint goes, we can not say, as a matter of law, that appellant was required to erect a barrier to prevent travelers on the sidewalk from coming in contact with it. Neither can we say the stone, as described, constituted a defect in the sidewalk; nor that its presence "along the sidewalk at the edge thereof" rendered the walk unsafe for travel in the ordinary modes. A stone, such as is described in the complaint, would not attract the attention of the city's officers to it, nor suggest to them or to any one else that it was dangerous and should be guarded. So far as the complaint goes, the appearance of the stone was not unusual, and would not suggest to the mind of an ordinarily prudent person that it was a menace or hazard to a foot traveler using the sidewalk in the "ordinary modes" of

Baltimore, etc., R. Co. *v.* Clapp—35 Ind. App. 403.

travel. The same accident might have happened to appellee if she had wandered from the walk and struck her foot against a brick or rubbish or a peg, and thus been thrown to the ground.

While a city is charged with the duty of making its streets and sidewalks reasonably safe for travel, it is not required to guard against every possibility of danger incident to their use. Nor is every defect in a street or sidewalk, though it may cause injury, actionable.

Under the facts here pleaded, to hold that they state actionable negligence, and constitute a cause of action, would be placing a burden upon appellant and all other municipalities which the law does not authorize.

The judgment is reversed, and the trial court is directed to sustain appellant's demurrer to the amended complaint.

Comstock, C. J., Robinson, P. J., and Myers, J., concur. Roby and Black, JJ., absent.