# TOWN OF SPENCER v. MAYFIELD.

[No. 6,340.   Filed June 12, 1908.   Rehearing denied October 8, 1908.   Transfer denied January 15, 1909.]

1. PLEADING. — *Complaint.* — *Municipal Corporations.* — *Defective Streets.*—*Injuries.*—A complaint by a pedestrian alleging that defendant town constructed an open ditch in a certain street and left it unguarded, that a culvert without guard-rails was erected across same, that the town negligently failed to light such place, that the plaintiff, without any knowledge of such condition, undertook to walk along such street in the night-time and fell into such ditch, to her injury, states a cause of action. p. 136.

2. PLEADING. — *Complaint.* — *Municipal Corporations.* — *Defective Streets.*—*Adjacent Dangers.*—The want of a sufficient railing or barrier to prevent travelers upon a street from running into some dangerous excavation or obstruction adjacent to the street and in the general direction thereof, may be described as a defect in the street itself. p. 140.

3. MUNICIPAL CORPORATIONS.—*Defective Streets.*—*Guard-Rails.*— Whether a guard-rail is necessary for the protection of travelers along a street must be determined from all of the facts of the particular case, there being a duty on the part of the municipality to keep the streets, at all times, reasonably safe for travel in the ordinary modes. p. 140.

4. MUNICIPAL CORPORATIONS.—*Guarding Dangerous Streets.*—*Negligence.*—In the absence of negligence municipalities are not liable

for a failure to construct barriers to prevent travelers from going outside of the line of the streets and thereby sustaining injuries. p. 141.

5. MUNICIPAL CORPORATIONS. — *Discretionary Acts.* — *Lighting Streets.*—Municipalities are not liable for their discretionary acts, such as lighting the streets. p. 141.

6. MUNICIPAL CORPORATIONS.—*Defective Streets.—Unanticipated Dangers.*—Municipalities are not liable for a failure to guard defects in streets, where injuries therefrom could not reasonably be anticipated. p. 141.

7. MUNICIPAL CORPORATIONS.— *Streets.— Ditches.— Guarding.—* A properly constructed ditch, twenty-two inches deep, cut for drainage purposes adjacent to a sidewalk, is not required to be covered its entire length, and is necessary although there might be nights when the streets would not be lighted. p. 142.

8. MUNICIPAL CORPORATIONS.—*Defective Streets.—Duty.—Accident.—Darkness.*—Municipalities are not insurers of the safety of their streets; and where the defect is such that no prudent person would anticipate any danger therefrom, the question of liability is for the court, but where a traveler is forced out of the traveled way by some accident, to his injury, he can recover, darkness, however, not being such an accident. p. 143.

9. MUNICIPAL CORPORATIONS.—*Sidewalks.—Unguarded Ditch Adjacent.—Darkness.—Injury.*—Where a town constructed a ditch twenty-two inches deep adjacent to a sidewalk, securely covering the same at street crossings, but leaving it uncovered between street crossings, it could not reasonably be anticipated that an elderly woman, on a dark night, would walk along such covered way thinking she was on the sidewalk, and fall over the end thereof into the ditch, to her injury. p. 143.

From Putnam Circuit Court; *Presley O. Colliver,* Judge.

Action by Belle Mayfield against the town of Spencer. From a judgment for plaintiff, defendant appeals. *Reversed.*

*Homer Elliott* and *Willis Hickam,* for appellant.

*John R. East, Rufus H. East* and *Renner & McNutt,* for appellee.

COMSTOCK, J.—The action was commenced in the Owen . Circuit Court and tried in the Putnam Circuit Court upon change of venue. Appellee recovered judgment below for $2,000 for personal injuries received in falling or step-

ping off of a bridge or culvert at the intersection of Wolf and Meek streets in the town of Spencer. The jury assessed her damages at $3,800. Appellee remitted $1,800 of this amount, and appellant's motion for a new trial was overruled and judgment rendered for the amount first named. The cause was put at issue upon an amended complaint in one paragraph and an answer in general denial.

The complaint, in substance, and briefly stated, alleges that the town had constructed an open ditch in Meek street, which it left unguarded and unprotected in any manner; that a culvert had been built across this ditch at the intersection of Wolf and Meek streets, and that the east end of said culvert was without guard-rails to prevent persons from walking off of the same in the darkness of night, and the town had negligently failed so to guard the end of said culvert and had negligently failed to furnish light at the crossing to enable persons to see their way; that the town knew of this condition, and negligently suffered the same to remain for many months prior to October 25, 1903; that the plaintiff was without knowledge of the ditch and the culvert, and the fact that they were unguarded and unprotected, and was unaware of the danger in using the street at that point; that the ditch and culvert at the intersection of said two streets were dangerous, and that, by reason of the negligent failure of the town to guard and protect the culvert, and the ditch, the appellee, while walking eastward on Meek street, and being unable, on account of the darkness, to see her way, stepped off the end of said culvert, fell into said ditch, and was injured as alleged in the complaint. With the general verdict the jury returned answers to interrogatories.

The errors discussed are the action of the court in overruling defendant's demurrer for want of facts to the amended complaint and in overruling its motions for judgment on the answers to interrogatories and for a new trial.

It is argued that the complaint is insufficient, in that it

does not allege that the ditch was not a necessary one for drainage, or that it was wider or deeper than was necessary, or that it was dug and maintained across the street or sidewalk so as to constitute a defect in either. It is insisted that the ditch described is not a defect in the street or sidewalk at all. So far as objections are pointed out to the complaint, it was sufficient to withstand a demurrer.

The evidence shows that plaintiff received her injury in stepping off of the culvert between the driveway and sidewalk at the intersection of Meek and Wolf streets in a new addition to the town of Spencer. Meek street runs east and west. The culvert is at the crossing of Wolf street running north and south. The ditch was found by the jury to be twenty-two inches deep in the deepest place at the east end of the culvert, and four and one-half feet wide. The culvert was constructed on stone walls about three feet broad, and was of two-inch oak boards, spiked down and level with the top of the ground. The culvert was about thirty-eight feet long, covering the whole width of Wolf street, including sidewalks, and was about four feet wide. The ditch was an open one for two blocks east and for about two blocks west of the culvert. The street and sidewalk were unimproved, being in a new part of the town, sparsely settled. The sidewalk was eight feet wide and the driveway of the street was about the usual width. The ditch was an open one, entirely exposed to view, except that it had about four or five culverts across it. There were no guard-rails around the culvert or along the ditch. At the crossing where appellee was hurt, the town for six years or more had maintained a 2,000 candle power arc light, suspended at a height of about twenty feet immediately over the center of the crossing, and which lighted up the crossing, culvert and ditch. It was maintained by the Spencer Electric Light Company under a contract with the town to keep the streets lighted at all times on each and every night in the year from sunset until midnight (unavoidable accidents and the acts of God ex-

cepted), except at such times as there was unobstructed moonlight. The light had always been satisfactory, was in perfect condition on the night in question, and when lighted had been sufficient and satisfactory to make the culvert safe. The accident complained of occurred at about 7 o'clock on the evening of October 25, 1903. The lights had not been turned on by the light company at that hour, for the reason, as the light company claimed, that the moon was shining, and that the light was not necessary. Appellee and her daughter, who was with her at the time of the accident, testified that it was too dark to discern objects, without the light. Appellee had lived five blocks south of this crossing for thirty-five years. For a year before the accident one of her daughters, Mrs. Knight, had lived on the north side of Meek street, one block and the width of a street east of the crossing where appellee was hurt. Appellee occasionally visited her daughter during that year, crossing this ditch coming and going, usually crossing one block east and above the culvert where she was hurt, the ditch running in front of her daughter's home. The ditch was open to view from Mrs. Knight's house down to the culvert where appellee was hurt. About a month before the accident, appellee and her daughter walked down this street in the daytime, past the culvert in question, going to another daughter's, who lived in that direction. On the evening of her injury appellee and her daughter Mrs. Crippen had gone to see her daughter Mrs. Knight, crossing this ditch that evening. About 5:30 o'clock p. m., and, as the jury find, while it was light enough that they could see the ditch and culvert, appellee and Mrs. Crippen walked down this sidewalk to Mrs. Vandevanter's, the second house below the crossing in question. Between 6:35 and 7 o'clock they started from Vandevanter's to go back to Mrs. Knight's.

Mrs. Crippen testified that when they came out of Vandevanter's house, they went to the walk and went down the walk to Wolf street and started south on Wolf street to go

to the middle of Meek street. She testified that about that time she had become somewhat accustomed to the darkness, could see the roadway, and thought she was in Meek street when she came on that bridge across the street and started right down the bridge, thinking it was in the middle of Meek street, and until she stepped off did not know differently. She testified that her mother was on her left side. That she did not discern objects near by; did not know whether she could discern them or not; thought the bridge was the road; did not notice where the end of the bridge was; thought that when they reached Wolf street she could see there was a road; thought the street was not graveled until they came to Wolf street. It was graveled all the way over the bridge, and was level with the street. She further testified: "We just walked at an ordinary gait, talking as women do. I had no acquaintance with this point of Meek and Wolf streets; did not know there was a bridge or culvert there; had no knowledge of any danger there, and was on the sidewalk until we came to Wolf street. We started to the center of Meek street because it was the cleaner and smoother way to go, the middle of the street we supposed was smoother than the sidewalk, and supposed we were in the middle of the street when we stepped off in the ditch. It was probably five feet from the sidewalk to the bridge, we turned south after we got onto the bridge, and thought we were in the middle of Meek street."

Appellee testified that she just walked along until she fell in the ditch, without thinking whether she was on the sidewalk or the street, never thought anything about it—just went ahead, thought neither she nor her daughter said anything about it, noticed that the electric light was not burning, did not see any moon, and thought the moon was not in view at all. The appellee in her examination before the trial, testified that they intended to take the sidewalk, but missed it, did not know there was any ditch or crossing where she stepped off, and stepped off the east end of the culvert

into the ditch. In traveling the sidewalk the usual way, it was not necessary to cross the ditch at all. Appellee knew in a general way that the ditch was there, but did not know that the culvert was there, took no thought of any danger, and could not see anything, because of the darkness.

The want of a sufficient railing and protection to prevent travelers passing upon a highway from running into some dangerous excavation, or pond, or against a wall, 2. stones, and other dangerous obstructions, without the limits of a road, but in the general direction of travel thereon, may properly be alleged as a defect in the highway itself. *Davis* v. *Hill* (1860), 41 N. H. 329; *Willey* v. *Portsmouth* (1857), 35 N. H. 303; *Coggswell* v. *Inhabitants, etc.* (1849), 4 Cush. 307; *Hayden* v. *Inhabitants, etc.* (1856), 7 Gray 338; *Jones* v. *Inhabitants, etc.* (1849), 4 Cush. 299; *Palmer* v. *Inhabitants, etc.* (1849), 2 Cush. 600.

The invariable essential in all cases where a railing is required is some dangerous object or place outside of the required railing in or upon which the traveler may 3. come to harm if not warned or detained therefrom by the railing; but whether the absence of a railing is a defect, and the neglect to maintain one a breach of duty which would render a town liable, must be determined by the character of the place or object between which and the traveled road it is claimed that the barrier should be interposed. *Sale* v. *Aurora, etc., Turnpike Co.* (1897), 147 Ind. 324, and cases cited. Judge Dillon states the measure of such duty as follows: ''A municipal corporation is not an insurer against accidents upon the streets and sidewalks. Nor is every defect therein, though it may cause the injury sued for, actionable. It is sufficient, we think, if the streets (which include sidewalks and bridges thereon) are in a reasonably safe condition for travel in the ordinary modes, by night as well as by day; and whether they are so or not is a practical question, to be determined in each case by its par-

ticular circumstances.'' 2 Dillon, Mun. Corp. (4th ed.), §1019.

The same author further says: ''Thus towns are not necessarily bound to fence or to erect barriers to prevent travelers from getting outside of the road or way. A municipal corporation may determine for itself to what extent it will guard against mere possible accidents, and, if it be not guilty of negligence, the judicial tribunals are not to say it shall suffer in damages for not giving to the public more complete protection, since that would practically take the administration of municipal affairs out of the hands to which it has been intrusted by law.'' 2 Dillon, Mun. Corp. (4th ed.), §1005. Scores of cases might be cited holding municipal corporations liable for accidents of the same general character as the one here involved, and a like number in which they have been held not liable. In many, the question of negligence has been held to be for the jury and in others for the court, each depending upon its own peculiar circumstances.

For discretionary acts, a municipal corporation is not liable, and where cities and towns are under no statutory obligation to light highways, they are not liable for a failure so to do. *Gaskins* v. *City of Atlanta* (1884), 73 Ga. 746; *City of Vincennes* v. *Spees* (1905), 35 Ind. App. 389, and cases cited.

A municipal corporation is only required to guard against such dangers in its streets as can or ought to be anticipated or foreseen in the exercise of reasonable prudence and care. The evidence shows that in the construction of the culvert in question there was nothing wanting except the railing. It is evident that in the daytime, or when there was sufficient light, there was no danger of anyone's stepping off the end of the culvert. The culvert, unguarded by a railing, became only insufficient when the darkness was so great that appellee was unable to see the road

and its surroundings. The plaintiff's stepping off was therefore the combined result of the alleged defect and the darkness. Because of the darkness she might have stepped into the uncovered portion of the ditch from either the sidewalk or the street. It might be that the uncovered gutter is not the best design—by some persons an open gutter might be considered the safest—but the corporation is only bound to use a method reasonably safe. Any other method used approached nearly to the liability of an insurer.

In *Morse* v. *Belfast* (1885), 77 Me. 44, the court said: "But in the construction of such ways it oftentimes becomes necessary, as well as proper, to construct ditches along their sides, and when this is properly done it is not the province of the court to declare them defects. This is in accordance with the principle laid down in *Macomber* v. *City of Taunton* [1868], 100 Mass. 255, in which Chapman, C. J., says: 'On each side of this way there may be ditches. These are so necessary for the proper drainage of the carriage-way that they are held not to be defects, if properly constructed, though travelers may be liable to fall into them in the dark.' The plaintiff also claims there should have been a railing between these ditches and the traveled way. If it were necessary in this instance for the purpose of rendering the road reasonably safe and convenient, we have no doubt there are very few roads, then, in our state which would not require it." In the case of *Spaulding* v. *Inhabitants, etc.* (1883), 74 Me. 528, 537, it is said: "There are many thousands of such places within this state. If railings are required for them, towns would have extraordinary burdens to maintain their roads."

The ditch in question was necessary for purposes of drainage, in carrying off water from rains and melting snows. It was properly constructed. The fact that there might be nights when the streets would be unlighted would not do away with this necessity, nor would reasonable care require that it be covered its entire length.

A town or city is not responsible for every accident that may happen in its streets. It cannot be required to keep streets in such a condition as to insure the safety of travelers under all conditions. When the defect is such that no prudent man would reasonably antici-pate any danger from its existence, but which could have been guarded against by the exercise of extraordinary care, the question of responsibility is then one of law. It has been held that, where parties are injured by being forced out of an insufficiently-guarded traveled track by some accident which could not have been foreseen by the exercise of ordi-nary care, the corporation is liable—for instance, where horses have become frightened, or some portion of the vehi-cle or harness broken—but darkness has not been held to be an accident. The traveler on foot or riding knows when it becomes too dark to see his way, and can reasonably guard against it.

8.

There is no conflict in the evidence as to the manner of the construction of the culvert, nor its condition, nor the condition of the street. There is a conflict as to the degree of darkness and whether the moon was visible at the time appellee received her injury. Adopting the testimony of appellee and her daughter as to the dark-ness of the night and the manner of her injury, the ques-tion of the negligence of appellant becomes one of law for the court. If the absence of the railing, under the facts in question, makes the appellant liable, there are but few streets in our towns or cities reasonably safe. The injury for which appellee sues could not have been anticipated in the exer-cise of reasonable prudence. Appellant was not required to guard against possible danger, but only such as might rea-sonably be anticipated. Under the undisputed facts the municipal authorities could not have reasonably anticipated the injury for which appellee sues.

9.

There is not an irreconcilable conflict between the answers to interrogatories and the general verdict. We do not deem

it necessary to pass upon other alleged errors, including the question of appellee's contributory negligence.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

Roby, J., absent.