City of Indianapolis *v.* Williams—58 Ind. App. 447.

---

## CITY OF INDIANAPOLIS *v.* WILLIAMS, GUARDIAN.

[No. 8,551. Filed April 1, 1915.]

1. APPEAL.—*Review.*—*Verdict.*—*Complaint.*—Where a paragraph of complaint, held good on demurrer by the trial court, is found insufficient on appeal, and the verdict does not disclose on which paragraph of the complaint it rests, the sufficiency of other paragraphs is immaterial, since the verdict can not stand. p. 452.

2. MUNICIPAL CORPORATIONS.—*Public Works.*—*Liability for Injuries.*—A city is not liable for consequential injuries that result from the construction of public works, in the absence of negligence or want of due care or skill, and this includes the construction, maintenance and operation of sewers and streets. p. 452.

3. MUNICIPAL CORPORATIONS.—*Governmental Functions.*—*Liability for Injuries.*—A city is not liable for injuries that flow from its failure to perform a governmental function, or from its discretionary acts. p. 452.

4. MUNICIPAL CORPORATIONS.—*Streets.*—*Duty as to Condition.*—A city is required to keep its streets and thoroughfares in a reasonably safe condition for travel in the ordinary manner or mode of travel, and is not required to guard against possible danger, but only such as might reasonably be anticipated. p. 453.

5. NEGLIGENCE.—*Attractive Nuisance.*—*Municipal Corporations.*—The doctrine of "attractive nuisance", under which an individual or corporation is liable for injuries to a child *non sui juris* caused by leaving unguarded and exposed machinery or surroundings of such nature and character as to naturally tempt and allure children to play with or otherwise use the same, applies to cities. p. 453.

6. NEGLIGENCE.—*Attractive Nuisance.*—*Municipal Corporations.*—*Liability.*—Where the complaint against a city for the death of a boy, drowned while wading in a stream by stepping into a hole therein formed by a sewer emptying there, alleged that the boy, eleven years old, was without knowledge of the existence of the hole, that the city negligently constructed the sewer so as to cause a depression or hole in the bed of the stream and permitted it to remain after it had knowledge thereof, and that, with knowledge that children were attracted thereto, it negligently failed

to guard the same, a liability under the doctrine of attractive nuisance was shown. pp. 454, 457.

7. MUNICIPAL CORPORATIONS.—*Negligence.*—*Attractive Nuisance.*— *Liability.*—The liability of a city for the death of a child, that was drowned while wading 'in a stream by stepping into a hole formed therein by a sewer emptying there, is not affected by the fact that the sewer emptied into the stream on private grounds, nor by the method by which the right to turn the sewer into the stream at such point was obtained. p. 456.

8. NEGLIGENCE.—*Contributory Negligence.*—*Infants.*—The court can not say as a matter of law that a child eleven years old, who was drowned while wading in a stream by stepping into a hole formed therein by a city sewer emptying there, and of which he had no knowledge, was guilty of contributory negligence. p. 456.

9. APPEAL.—*Review.*—*Evidence.*—*Verdict.*—Where the facts established by the evidence follow the allegations of the complaint which sufficiently states a cause of action, a verdict based thereon is sustained by sufficient evidence and is not contrary to law. p. 457.

10. APPEAL.—*Review.*—*Harmless Error.*—*Exclusion of Evidence.*— The exclusion of evidence to show a fact which the jury specially found in appellant's favor, was harmless. p. 458.

11. APPEAL.—*Review.*—*Harmless Error.*—*Instructions.*—The giving of instructions as to a city's duty to keep its streets safe, though not applicable to the evidence, was harmless in view of the jury's special finding that the place in question was not open for public travel. p. 459.

12. APPEAL.—*Review.*—*Refusal of Instructions.*—Requested instructions not conforming to the theory of the case properly adopted by the trial court, were correctly refused. p. 459.

13. APPEAL.—*Review.*—*Harmless Error.*—*Interrogatories to Party.* —The action of the trial court in requiring the appellant to answer certain interrogatories during the process of making the issues, if error, was not harmful where it does not appear that the interrogatories were put in evidence. p. 460.

14. DEATH.—*Death of Child.*—*Excessive Damages.*—A verdict for $2,250 for the death of a boy eleven years old is not so large that the court on appeal can say therefrom that the jury disregarded the instructions of the court and acted with prejudice or partiality, and can not be disturbed on the ground that the amount is excessive. p. 460.

From Johnson Circuit Court; *Wm. E. Deupree,* Judge.

Action by Kate Williams, as guardian of Andrew Williams, against the City of Indianapolis. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Joseph B. Kealing, Merle N. A. Walker, Newton J. Mc-Guire* and *William Featherngill,* for appellant.

*Walter L. Carey* and *L. Ert Slack,* for appellee.

MORAN, J.—On September 11, 1910, Fred Williams, a boy eleven years old, was drowned while swimming in Pogue's Run in the city of Indianapolis. He lost his life in what is known as the "sewer hole" at the intersection of Wisconsin Street and Pogue's Run. To the complaint in three paragraphs charging appellant with negligently causing the death of Fred Williams, demurrers were filed and overruled, and the cause put at issue by an answer of general denial. A trial by a jury was had in the Johnson Circuit Court, where the cause had been venued, and a verdict rendered in favor of appellee in the sum of $2,250; judgment on verdict, from which this appeal is prosecuted. The errors assigned are, (1), overruling the demurrer to the complaint, (2) overruling the separate demurrer to the second and third paragraphs of complaint, (3) overruling motion to strike out certain interrogatories during the making of the issues, (4) overruling appellant's motion for judgment on answers to interrogatories, and (5) overruling appellant's motion for a new trial.

The various paragraphs of complaint do not differ in theory. The material allegations of the first paragraph are, that appellee is the guardian of Andrew J. Williams, a person of unsound mind, who for many years had been confined in the Indiana Central Hospital for the Insane. Appellee and Andrew J. Williams were the mother and father of Fred Williams, deceased, who was eleven years old at the time of his death. Appellant is a municipal corporation organized under the laws of the State of Indiana. Running east and west in the city of Indianapolis is an improved street known as Wisconsin Street, and running through the city is a stream known as Pogue's Run, which intersects with Wisconsin Street within the corporate limits of the city,

in a thickly populated part thereof. A large sewer empties into the stream at the intersection of the same and Wisconsin Street, which sewer is a part of the sewerage system of the city. The sewer empties into the stream almost in the center of Wisconsin Street. The sewer was so constructed by appellant that the mouth of the same was several feet above the surface of the water in the stream and the flow of the water and sewage therefrom falls a great distance into the stream. Many months prior to September 11, 1910, the sewer had washed out, wore and made a large, deep and dangerous hole in the bed of the stream, about eight feet in diameter and about the same depth, and was, for many months prior to the date above mentioned, filled with water and sewage. Appellant carelessly and negligently caused and allowed the sewer to be constructed, so as to make it wear a hole in the bottom of the stream, by the water and sewage flowing out of the mouth thereof. Appellant carelessly and negligently allowed the hole to remain in a dangerous condition for many months prior to September, 1910. Appellant knew of the existence, position and condition of the hole for several months prior to said date and permitted it to remain in a dangerous condition before Fred Williams lost his life therein. Appellant failed to place guards, notices or warnings of any kind at or near the hole or ground adjacent thereto. The ground surrounding the stream at this point was and had been prior to the death of Fred Williams used by children as a playground with knowledge of appellant. The stream at this place and the ground adjacent attracted children thereto for the purpose of playing and wading in the stream. Appellant took no steps to warn or protect children from the danger of falling into the hole. On September 11, 1910, Fred Williams with other boys near his age was attracted by natural instinct, to the stream and playground at this place, and while he was wading in the stream, he stepped into the hole and was drowned and poisoned by the water and poisonous sub-

stances in the hole. He was not acquainted with the stream at this place and did not know of the existence of the hole. He acted under the circumstances as an ordinarily prudent person of his age would have acted for his own safety. The father and mother did not know that their son was near the stream at the time and had no knowledge of the existence of the hole in the stream. Their son was a bright, healthy, industrious boy, possessed of no bad habits and was earning four dollars per week at the time of his death. Appellee and Andrew J. Williams were entitled to his earnings until he arrived at the age of twenty-one years. The funeral and other necessary expenses amounted to $150. Within sixty days from the date of his death, notice was given to appellant, containing a brief general description of the time, place and cause of the death of Fred Williams. Appellee was damaged in the sum of $5,000.

The facts alleged in the second paragraph of complaint differ from those alleged in the first, in that it is alleged that the sewer empties into Pogue's Run in the vicinity of and near Wisconsin Street; and that the grounds surrounding the same were improved and open to the public; and that worn and beaten paths used by the public led through the grounds from the street along the banks of the stream to the mouth of the sewer and hole; and that the hole was hidden, unseen and dangerous.

The third paragraph states the same general facts alleged in the first, except that it alleges in a general way that the sewer empties into the stream within the corporate limits of the city, without designating the place.

It will be noticed that the first paragraph of complaint alleges that the sewer emptied into a stream in a public street, and the second paragraph alleges that it emptied into a stream near a public street. These allegations give the paragraphs respectively the benefit of the location of the alleged source of danger in a public place. The third paragraph of complaint alleges generally, as aforesaid that the

sewer emptied into a stream. The facts pleaded in this paragraph are less favorable to the pleading, in this particular, than the first and second paragraphs of complaint.

If the third paragraph of complaint is sufficient to withstand a demurrer, an examination of the first and second paragraphs will be unnecessary, and, if insufficient to withstand a demurrer, a further examination would be useless as the verdict does not disclose on which paragraph it rests. *Lake Erie, etc., R. Co.* v. *McFall* (1905), 165 Ind. 574, 76 N. E. 400; *Baltimore, etc., R. Co.* v. *Hunsucker* (1904), 33 Ind. App. 27, 70 N. E. 556. As a matter of convenience and brevity, our presentation of questions arising upon the overruling of the demurrer will be addressed to the third paragraph of complaint.

Appellant argues that being a municipal corporation, it has the right to exercise certain powers, such as constructing sewers and sidewalks, and that it cannot be held liable for consequential injuries resulting from the exercise of such powers. A municipal corporation cannot be held liable for consequential injuries that result from the construction of public works, in the absence of negligence or want of due care or skill, and this includes the construction, maintenance or operation of sewers and streets. *Northern Transp. Co.* v. *City of Chicago* (1879), 99 U. S. 636, 25 L. Ed. 336; *City of Richmond* v. *Test* (1897), 18 Ind. App. 482, 48 N. E. 610; *Weis* v. *City of Madison* (1881), 75 Ind. 241, 39 Am. Rep. 135; *City of Evansville* v. *Decker* (1882), 84 Ind. 325, 43 Am. Rep. 86; *Rice* v. *City of Evansville* (1886), 108 Ind. 7, 9 N. E. 139, 58 Am. Rep. 22; *Peck* v. *City of Michigan City* (1898), 149 Ind. 670, 49 N. E. 800. Nor is a city liable for injuries that flow from a failure on the part of the city to perform a governmental function, nor for its discretionary acts. *City of Vincennes* v. *Spees* (1905), 35 Ind. App. 389, 74 N. E. 277; *Town of Spencer* v. *Mayfield* (1909), 43 Ind. App. 134, 85 N. E. 23; *City of Vincennes*

v. *Thuis* (1902), 28 Ind. App. 523, 63 N. E. 315. The

4.  true measure of the duty of a municipality as to its streets adduced from the authorities is that it is required to keep its streets and thoroughfares in a reasonably safe condition for travel in the ordinary manner or mode of travel, and it is not required to guard against possible danger, but only such as might reasonably be anticipated. 2 Dillon, Mun. Corp. (4th ed.) §1019; *Town of Spencer* v. *Mayfield, supra.* The general propositions as to the measure of duty of a municipality to a traveler upon a street, afford but very little assistance in this case, in arriving at the value of the complaint tested by demurrer, for the reason that the child in this case was not a traveler upon the street at the time he lost his life, within the meaning of the principles above announced.

If the third paragraph of complaint states a cause of action, it is not on the theory of a traveler being injured by reason of a defect in a street; but upon the doc-

5.  trine of an "attractive nuisance", or the doctrine upon which rest what are known as the "turntable cases". Does this doctrine apply with the same force to a municipal corporation as it does to an individual or private corporation? It may be stated generally that within a limited scope, a municipal corporation stands in the same relation to the law as any other corporation. "Municipal corporations are responsible to the same extent and in the same manner as natural persons, for injuries occasioned by negligence or unskillfulness of their agents in the construction of works for the benefit of the cities or towns under their government." *Ross* v. *City of Madison* (1848), 1 Ind. 281, 48 Am. Dec. 361. See, also, *City of Greencastle* v. *Martin* (1881), 74 Ind. 449, 39 Am. Rep. 93; *Roll* v. *City of Indianapolis* (1876), 52 Ind. 547; *Stackhouse* v. *City of Lafayette* (1876), 26 Ind. 17, 89 Am. Dec. 450; *Brinkmeyer* v. *City of Evansville* (1867), 29 Ind. 187; *Aiken* v. *City of Columbus* (1906), 167 Ind. 139, 78 N. E. 657, 12 L. R. A.

(N. S.) 416. It would seem, both upon principle and authority, that the doctrine of "attractive nuisance" applies to municipal corporations the same as it does to individuals or private corporations. Do the facts alleged in the

6. third paragraph of complaint bring it within the doctrine of an "attractive nuisance" or upon the doctrine upon which rest the "turntable cases"? There are jurisdictions that do not recognize this doctrine. However, it is not an open question in this State that an individual or corporation is liable for injuries to a child *non sui juris* caused by leaving unguarded and exposed machinery or surroundings, which are of such a nature and character as to naturally tempt and allure children to play with or otherwise use the same. *Chicago, etc., R. Co.* v. *Fox* (1906), 38 Ind. App. 268, 70 N. E. 81; 1 Thornton, Negligence §435; *Lewis* v. *Cleveland, etc., R. Co.* (1908), 42 Ind. App. 337, 84 N. E. 23.

In the *City of Indianapolis* v. *Emmelman* (1886), 108 Ind. 530, 9 N. E. 155, an action was brought to recover damages for the death of a boy, who fell into a hole in the bed of a stream constructed by the city, while preparing to build a bridge at a point where the street crossed the stream. Mitchell, J., said, "Whoever, therefore, does anything in, or immediately adjacent to a public street, calculated to attract children of the vicinity into danger, which they cannot appreciate, owes the duty of protecting them by suitably guarding the source of danger, or in case this is impracticable, by giving timely warning to their parents and guardians of the existence of the danger." In *Bjork* v. *City of Tacoma* (1913), 76 Wash. 225, 135 Pac. 1005, 48 L. R. A. (N. S.) 331, damages were sought for the death of a child, who was drowned in a wooden flume, which was situate on an uninclosed right of way of the city of Tacoma, and was used for carrying water from the source of its supply to its reservoir. An appeal was taken from a judgment of nonsuit, and the supreme court of Washington reversed this

judgment, holding that as to whether the opening in the flume was not, in its nature, a thing reasonably to be anticipated as enticing to young children was a question for the jury, and not one of law.  In *Pekin* v. *McMahon* (1895), 154 Ill. 141, 39 N. E. 484, 45 Am. St. 114, 27 L. R. A. 206, a child was drowned in a hole or pit located on a tract of real estate owned by the city, which had been dug by the city and water had been permitted to accumulate therein. The supreme court of Illinois held the city liable for the death of the child.  In *Penso* v. *McCormick* (1890), 125 Ind. 116, 25 N. E. 156, 21 Am. St. 211, 9 L. R. A. 313, William Penso, by his next friend brought an action against Mc Cormick to recover for injuries received by him by reason of stepping into a mound of burning embers and cinders on McCormick's land while there in search for some cattle.  A demurrer to the complaint was sustained, from which an appeal was prosecuted.  The Supreme Court reversed the judgment holding the complaint good.  In *Coeur D'Alene Lumber Co.* v. *Thompson* (1914), 215 Fed. 8, 131 C. C. A. 316, 53 L. R. A. (N. S.) 731, a small boy was drowned in a well located upon the land of the lumber company, where it had formerly maintained a sawmill.  It had moved all of its machinery and buildings from the land, but neglected to fill up the well.  The United States Circuit Court of Appeals affirmed the lower court in rendering a judgment for $2,500.  In *Haynes* v. *City of Seattle* (1912), 69 Wash. 419, 125 Pac. 147, a boy was injured by becoming entangled in electric wires, which were being strung on poles in front of a public school building by workmen of the city. It was held that "A child of tender years who meets with an injury upon the streets, or upon the premises of a private owner, though a technical trespasser, may recover for such injury if a thing causing it has been left exposed and unguarded near the playgrounds or haunts of children and is of such a character as to be alluring or attractive to them, or such as to appeal to childish curiosity and instincts."

In *Kansas City* v. *Seise* (1905), 71 Kan. 283, 80 Pac. 626, the city, in improving one of its streets, caused a pond to be created of considerable depth; at a certain place in the pond there was a very abrupt depression, which made it dangerous. A sewer was constructed over the surface of the water by several piles upon which a trough holding the pipe in place was laid. It attracted children thereto. The city was held liable for the drowning of a twelve-year-old boy, who was playing in the water in the pond and got too near the abrupt depression.

An examination of the authorities discloses that the doctrine of "attractive nuisance" or upon which rest the "turntable cases" has been, as aforesaid, disapproved in some jurisdictions, and in others it has been criticised. *Thompson* v. *Baltimore, etc., R. Co.* (1907), 218 Pa. St. 444, 67 Atl. 768, 120 Am. St. 897, 11 Ann. Cas. 894, 19 L. R. A. (N. S.) 1162, and authorities cited. But as a whole, no more can be said in the light of the authorities than that the current flow of judicial thought seems to limit rather than extend the doctrine. The third paragraph of complaint, if construed on the theory that doubt should be resolved against it, discloses that the sewer in question emptied into the stream on private grounds. Whether consent was obtained from the riparian owner to turn the sewer into the stream at this point, or whether the right of way was acquired by law, would not under the authorities relieve the appellant from the exercise of ordinary care in the supervision of the sewer, for the safety of children that were attracted to the same at the point of danger. In *Haynes* v. *City of Seattle, supra,* it was held that the city was liable where it left unguarded on private grounds a thing likely to attract or allure children thereto. Nor can the court say as a matter of law that a boy eleven years old, under the circumstances disclosed by the pleadings, was guilty of contributory negligence. *Cole* v. *Searfoss* (1912), 49 Ind. App. 334, 97 N. E. 345;

*Indianapolis, etc., R. Co.* v. *Wilson* (1893), 134 Ind. 95, 33 N. E. 793; *Keller* v. *Gaskill* (1893), 9 Ind. App. 670, 36 N. E. 303; *Louisville, etc., R. Co.* v. *Sears* (1894), 11 Ind. App. 654, 38 N. E. 837. It is alleged that Fred 6. Williams was without knowledge of the existence of the hole in the bed of the stream, and it is further alleged that appellant negligently constructed the sewer in question so as to cause a depression or hole in the bed of the stream and permitted it to remain after it.had knowledge thereof, and likewise it failed to guard the same after it had knowledge that children were attracted thereto. As against the objections urged each paragraph of the complaint is sufficient to withstand a demurrer.

The causes assigned for a new trial are: (1) the verdict of the jury is not sustained by sufficient evidence; (2) the verdict of the jury is contrary to law; (3) error of the court in excluding certain testimony; (4) error of the court in giving and refusing to give certain instructions; (5) the damages assessed by the jury are excessive and erroneous, being too large.

The evidence in the record establishes the following facts: Fred Williams and five of his companions on the afternoon of Sunday, September 11, 1910, met in a part of appellant city some distance from where he lost his life, and from there proceeded to what was called the "sewer hole", and which was generally known by this name. The hole is in the bed of Pogue's Run at the mouth of a large sewer, and was caused by the water and sewage dropping into the stream and had been there a long time prior to September 11, 1910. The sewer was a part of the sewer system of appellant city, and would have been located in the center of Wisconsin Street, where it empties into Pogue's Run, had Wisconsin Street been extended. At this point, Wisconsin Street is unimproved, and not used by the public, although shown upon the city plat. There is no bridge spanning the stream at this point, but when the water is

low the stream is forded by laboring men coming and going to their work in this locality. Small boys were, before the death of Fred Williams, in the habit of congregating in the vicinity of the hole, and the adjacent grounds were used by the boys as playgrounds and they frequently waded and went swimming in the stream in close proximity to the mouth of the sewer. The water covered a much wider area in the bed of the stream at this place than the circumference of the hole, and other than in the hole the water was shallow, but, from the surface of the water in the pond generally, the deep hole could not be discerned. It was some five feet deeper than the balance of the pond and about eight feet in circumference, and Fred Williams did not know of the existence of the hole prior to falling into the same. The city police frequently visited this place in the discharge of their duties and knew that boys congregated in and about the mouth of the sewer, and that the hole was unguarded, and that this condition had existed for a long time prior thereto. The father of Fred Williams was in the asylum at the time his son lost his life and had been for several years theretofore. His mother was compelled to wash and Fred assisted her in gathering the washing and also sold papers and ran errands for the neighbors. Outside of the testimony of a civil engineer as to the location of the hole and the nature of the land and surroundings in this vicinity, appellant offered no evidence. The facts follow the allegations of the third paragraph of complaint, except in a few minor details. Therefore, if our conclusion is correct that the complaint states a cause of action, when tested by demurrer, then the evidence supports the verdict and the judgment is not contrary to law.

Complaint is made of the trial court in excluding certain testimony to the effect that Wisconsin Street, although platted had been fenced by abutting property owners

10. from West Street to the switch, west of Pogue's Run, and that the same could not be used by the public at

the time Fred Williams lost his life.    Many witnesses tes-
tified to the nature and character of the surroundings at this
point, and the jury in answer to interrogatory No. 2 pro-
pounded by the court stated that Wisconsin Street was not
actually opened up for public travel at the place where
Fred Williams lost his life.    This fact having been specially
found in appellant's favor, it was not harmed by the exclu-
sion of the offered testimony.    And furthermore, had the
testimony been admitted, it would be merely cumulative.
*Hand* v. *Kidwell* (1884), 92 Ind. 409.

Complaint is also made of the trial court in giving to the
jury on its own motion instructions Nos. 17 to 27, inclu-
sive.    The tenor of these instructions, except Nos.
11.  24 and 25, is that if the jury found by a fair pre-
ponderance of the evidence that Fred Williams was
a child of tender years, and if the city maintained a dan-
gerous and attractive place, which was enticing to children,
and if Fred Williams was attracted thereto and lost his life
by reason of the place being dangerous and attractive, the
city would be liable if it knowingly maintained such a place.
These instructions are in harmony with the law as an-
nounced upon the ruling on the demurrer to the complaint.
Instructions Nos. 24 and 25 state indirectly a principle of
law applicable to an injury caused by a municipal corpora-
tion in failing to keep its streets in a reasonably safe con-
dition for travel.    When technically construed, neither of
these instructions are applicable to the evidence.    They are
so worded, however, that we feel the jury was not misled
thereby, and in this view we are further confirmed by the
answer the jury made to an interrogatory as aforesaid, that
Wisconsin Street was not opened up for public travel at
the point where appellee's son lost his life.    *Baltimore, etc.,
R. Co.* v. *Morris* (1913), 54 Ind. App. 479, 103 N. E. 35;
    *Abelman* v. *Haehnel* (1914), 57 Ind. App. 15, 103 N.
12.  E. 869.    The instructions tendered by the appellant
     were upon a different theory of law than that adopted

by the trial court in the trial of the cause, and unless the theory adopted by the trial court is erroneous, and we do not think it is, then the instructions tendered by appellant were correctly refused.

Appellant insists that judgment should have been rendered in its favor upon answers to the interrogatories. There were five interrogatories propounded to the jury by the court and the answers disclose that appellee's son lost his life on Sunday and that Wisconsin Street was not actually opened up for public travel at the time or place of the boy's death, and that he went there to play in the water, and was so playing when he lost his life. The point pressed is that the street not being opened up for travel, the place where he lost his life was not under the control of the city. This proposition has been presented upon the ruling on the demurrer to the complaint, and if our conclusion reached in that behalf is correct, the court did not err in overruling the motion for judgment on answers to interrogatories.

It is insisted in the argument of appellant's brief that the court erred in requiring appellant to answer certain interrogatories during the process of making the issues in the cause. We have examined each of the interrogatories and answers to the same, and we can not see how appellant was harmed in any manner by this ruling. From aught that appellant's brief discloses, the answers to interrogatories were not put in evidence and were used only for the purpose of obtaining information in the preparation of the second and third paragraphs of complaint.

This leaves but the cause for a new trial, that the amount of recovery is too large. The circumstances surrounding the death of Fred Williams were such that the jury might have traveled beyond the purview of the law and the facts in fixing the amount of recovery. However, the jury was instructed by the trial court that in arriving at a verdict it should not allow itself to be governed by

sympathy or prejudice, but that it should follow the law and the evidence in the cause.  We can not say from the amount of recovery that the jury disregarded the instructions of the court and acted with prejudice or partiality, and therefore it is not within our province to disturb the verdict by reason of the amount thereof.

There is no reversible error in the record.    Judgment affirmed.

NOTE.—Reported in 108 N. E. 387.  As to liability of municipal corporation for consequential injuries arising from work authorized by law, see 53 Am. Dec. 366.  Liability of landowner for injury to trespassing child on account of unguarded pond, pool, well, etc., see 7 Ann. Cas. 200; 11 Ann. Cas. 990; Ann. Cas. 1913 A 1032.  As to distinction between public and private functions of municipal corporations in respect to liability for negligence, see 19 L. R. A. 452; 1 L. R. A. (N. S.) 665.  As to the doctrine of attractive nuisance as applied to ponds, waterways, etc., see 19 L. R. A. (N. S.) 1143; 47 L. R. A. (N. S.) 1101.  See, also, under (2) 28 Cyc. 1065, 1069, 1074; (3) 28 Cyc. 1257, 1262; (4) 28 Cyc. 1358; (5) 29 Cyc. 447; 28 Cyc. 1293; (6) 29 Cyc. 567; 28 Cyc. 1465; (7) 28 Cyc. 1318; (8) 28 Cyc. 1510; 29 Cyc. 640; (9) 3 Cyc. 348; (10) 38 Cyc. 1455; (11) 38 Cyc. 1815; (12) 38 Cyc. 1707; (13) 3 Cyc. 383; (14) 13 Cyc. 375.